**J.J. DeLUCA COMPANY, INC.,**
Appellant (at 306)

v.

**TOLL NAVAL ASSOCIATES, Toll PA GP Corp., Inc., and Toll Bros., Inc., Appellants (at 307).**

Superior Court of Pennsylvania.

Argued Aug. 8, 2012.

Filed Oct. 12, 2012.

Reargument Denied Dec. 20, 2012.

Roy S. Cohen, Philadelphia, for J.J. De-Luca.

F. Warren Jacoby and Sarah E. Davies, Philadelphia, for Toll Naval.

BEFORE: SHOGAN, J., LAZARUS, J., and PLATT, J.*

* Retired Senior Judge assigned to the Superior Court.

OPINION BY PLATT, J.

Appellant/Cross–Appellee, J.J. DeLuca Company, Inc. (DeLuca), appeals from the order entered in favor of Appellees/Cross–Appellants, Toll Naval Associates, Toll PA GP Corp, Inc., and Toll Bros. Inc., (collectively, Toll), in these consolidated cross-appeals. DeLuca raises sixteen claims of error against the trial court. Toll raises nine counter-questions. We affirm.

This case is on appeal for the second time. The underlying suit arose out of the contractual relationship which began when Toll engaged DeLuca to be general contractor for the seventy-nine million dollar Naval Square Project for the construction of townhomes and condominiums on former Navy property in South Philadelphia, of which Toll was owner and developer. (*See generally*, Trial Court Rule 1925(a) Opinion, 1/10/12, at 1–3; *see also* Trial Ct. Op., 8/03/10, at 1–12, *passim.*) In addition to other compensation, DeLuca received 3.5% of total billings to Toll as a management or administrative fee. (*See* Trial Ct. Op., 8/03/10, at 6).

Disagreements developed over Toll's delays in obtaining required permits, untimely delivery of essential shop drawings, and work which Toll-directed to be performed out of sequence to suggest greater than actual progress for marketing purposes. Toll had complaints about DeLuca's quality of workmanship and failure to meet the contract schedule. The trial court attributes most of the delays to Toll. (*See id.*, at 7).

In any event, the parties decided to discontinue the arrangement, with Toll to become its own general contractor. After extensive negotiation they executed a Termination for Convenience Agreement (TCA), effective as of May 26, 2006, which, *inter alia*, allocated responsibilities for the turnover transition, and, notably for purposes of this appeal, limited the types of claims which could be brought.

On March 9, 2007, after mediation failed, DeLuca sued Toll for amounts held back by Toll under a 10% retainage arrangement. The complaint alleged breach of contract; unjust enrichment, *quantum meruit,* and violation of the Contractor and Subcontractor Payment Act (CASPA), 73 P.S. §§ 501–516. DeLuca originally sought damages in excess of four million dollars.

Toll counterclaimed for cost overruns, costs of completion, unanticipated personnel costs, and liquidated damages. Evidence developed by Toll during discovery depositions confirmed that subcontractors, including Brookside Construction, had been directed by DeLuca personnel to submit invoices to Toll for work not in fact performed at Naval Square, to compensate the subcontractors for other work for DeLuca at unrelated non-Toll worksites. Over DeLuca's objection, the trial court permitted Toll to amend its cross-complaint to include a counterclaim for fraud.

DeLuca apparently withdrew certain claims in its complaint associated with allegations of fraudulent billing. After a bench trial, the trial court issued its first order and opinion, awarding DeLuca $1,231,944.79. (*See* Order, 8/26/09).[1] After post-trial motions, the trial court, acknowledging "a clerical and mathematical error," entered a revised verdict which now awarded DeLuca $2,123,838.01. (Order, 3/09/10, at 1). The trial court denied all motions for attorneys' fees "because neither party is the' substantially prevail-

---

1. As explained in the companion opinion, the net award represented the trial court's finding that Toll owed DeLuca $1,237,488.79, with a set-off in favor of Toll of $5,544.00. (*See* Trial Court Opinion, 8/26/09, at 25).

ing party' under [CASPA]." (*Id.* at unnumbered page 2). The court also denied claims for interest as not preserved under paragraph ten of the Termination for Convenience Agreement, finding "[a]ll claims not preserved in the TCA are waived." (*Id.*). Even though it acknowledged Toll's discovery of "pervasive significant fraud" by DeLuca, the trial court stated that "all such sums have been voluntarily withdrawn or ruled not owed." (*Id.*). It also denied Toll's punitive damages claim as waived. (*See id.*). Both parties appealed.

On appeal, a panel of this Court vacated the judgment and remanded the case, deciding that the trial court erroneously concluded that Toll's claim for punitive damages had been waived. (*See J.J. DeLuca Company, Inc. v. Toll Naval Associates,* Nos. 1054 EDA 2010 and 1063 EDA 2010, unpublished order at 3 (Pa.Super. filed May 12, 2011)).

On remand, after a hearing, argument, and briefs, the trial court entered a $4,500,000.00 verdict in favor of Toll on the punitive damages claim, resulting in a net award to Toll of $2,376,161.99, after deducting the $2,123,838.01 previously awarded to DeLuca. (*See* Order, 6/07/11).

Both parties filed post-trial motions, and the trial court vacated its order of June 7, 2011. After a hearing, the trial court denied all post-trial motions and reinstated its June 7, 2011 award in favor of Toll for the net amount of $2,376,161.99. (*See* Order, 11/16/11). In its companion opinion, the court incorporated its opinion of August 3, 2010, and reaffirmed its order and opinion of March 8, 2010, except as to punitive damages. (*See* Order and Opinion, 11/16/11). On praecipe of Toll, the prothonotary entered final judgment on November 18, 2011. Both parties timely cross-appealed. The trial court filed an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) on January 10, 2012.[2]

On appeal, DeLuca raises sixteen issues.

1. Did the trial court commit clear error when it found that [Toll] paid $1,581,974.45 to [DeLuca] for fraudulent or improper billings?

2. Did the trial court commit clear error when it found that Toll is entitled to $4,500,000.00 in punitive damages?

3. Did the trial court make a finding of liability against DeLuca on a cause of action for fraud?

4. Did the trial court commit clear error when it found that Toll had not waived its claim for fraud?

5. Did the trial court commit clear error by not finding that Toll's claim for fraud is barred by the applicable statute of limitations?

6. Did the trial court commit clear error by not finding that the Gist of the Action Doctrine bars Toll's claim for fraud[?]

7. Did the trial court commit clear error by awarding punitive damages for a breach of contract claim?

8. Does the trial court's award of punitive damages violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution?

9. Did the trial court commit clear error when it made a mathematical error in determining the amount of the judgment reduced on account of Brookside Construction?

10. Did the trial court err as a matter of law in denying DeLuca's requests for attorneys' fees and costs as the "substantially prevailing party" pursuant to [CASPA]?

---

2. The court did not order new Rule 1925(b) statements of error.

11. Did the trial court err as a matter of law in finding that DeLuca is not entitled to attorneys' fees and costs pursuant to CASPA because Toll withheld payment from DeLuca in good faith?

12. Did the trial court err as a matter of law in holding that DeLuca is not entitled to interest pursuant to CASPA because Toll withheld payment from DeLuca in good faith?

13. Did the trial court err as a matter of law in finding that DeLuca is not entitled to interest pursuant to CASPA because DeLuca's right to interest was not preserved in paragraph ten of the parties' [TCA]?

14. Did the trial court err as a matter of law in finding that DeLuca is not entitled to interest pursuant to Restatement (Second) of Contracts § 354?

15. Did the trial court err as a matter of law in finding that DeLuca is not entitled to interest pursuant to 42 P.S. § 8101?

16. Did the trial court commit clear error by not awarding DeLuca all costs incurred by DeLuca on the Project?

(DeLuca's Brief, at 3–4).

In its brief, Toll raises nine questions, styled as a "counterstatement" of DeLuca's questions involved:

1. Whether, as a matter of law, the Trial Court properly awarded punitive damages in favor of Toll and against DeLuca in the amount of $4.5 Million?

2. Whether, by failing to raise timely challenges or objections to factual and legal findings by the Trial Court in the March 8, 2010 Order and Opinion and in the First Appeal, including those findings relating to fraud, DeLuca has waived its appellate rights with respect to those factual and legal findings, thereby barring any appeal as to those findings in this proceeding?

3. In addition to the waiver by DeLuca of its appellate rights, whether, on the merits, the Trial Court's finding that Toll paid $1,581,974.45 in fraudulent or improper billings to DeLuca was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence?

4. In addition to the waiver by DeLuca of its appellate rights, whether, on the merits, the Trial Court correctly rejected DeLuca's gist of the action argument and corollary argument that the damages awarded to Toll were for breach of contract?

5. In addition to the waiver by DeLuca of its appellate rights, whether, on the merits, the Trial Court correctly rejected DeLuca's statute of limitations argument with respect to Toll's fraud claim?

6. In addition to the waiver by DeLuca of its appellate rights, whether, on the merits, the Trial Court properly rejected DeLuca's claim that it had made a mathematical error in calculating that $560,000 of DeLuca's fraud was relating to Brookside Construction invoices?

7. Whether the Trial Court properly rejected DeLuca's claim that it should have been awarded "all costs" for the Project, where DeLuca failed to raise this argument on the First Appeal, thereby waiving it, and whether DeLuca has again waived this claim when DeLuca failed to present any argument in its Opening Brief in these proceedings to support this issue?

8. Whether the Trial Court properly refused to award attorneys' fees to DeLuca pursuant to [CASPA]?

9. Whether the Trial Court properly refused to award interest to DeLuca pursuant to [CASPA]?

(Toll's Brief, at 3–4).

Preliminarily, we are reminded of the observation by the Honorable Ruggero J.

Aldisert, Senior Circuit Judge of the United States Court of Appeals for the Third Circuit, that this Court has previously cited in *Kenis v. Perini Corp.*, 452 Pa.Super. 634, 682 A.2d 845 (1996), as well as other cases:

> When I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to any of them. I do not say that it is an irrebuttable presumption, but it is a presumption that reduces the effectiveness of appellate advocacy. Appellate advocacy is measured by effectiveness, not loquaciousness.

*Id.* at 847 n. 3 (citations omitted); *see also Commonwealth v. Snyder*, 870 A.2d 336, 340 (Pa.Super.2005) ("[T]he effectiveness of appellate advocacy may suffer when counsel raises numerous issues, to the point where a presumption arises that there is no merit to any of them.") (citations omitted).

In this appeal, many of DeLuca's arguments overlap or simply duplicate each other by raising the same issue in an alternative way. Also, the argument section of the brief structures the fraud claim questions, inconsistently numbered and lettered, as subsidiary questions to the punitive damages claim. (*See* DeLuca's Brief, at 16–42). In so doing, Appellant fails to comply with Pennsylvania Rule of Appellate Procedure 2119:

> The argument shall be divided into **as many parts as there are questions to be argued;** and shall have at the head of each part-in distinctive type or in type distinctively displayed-the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a) (emphasis added). Therefore, for clarity of analysis and to avoid unnecessary duplication, when ap-propriate we will address similar claims together.

■ DeLuca first assigns error to the trial court for its finding that Toll paid $1,581,974.45 for fraudulent or improper billings. (*See* DeLuca's Brief, at 3). DeLuca maintains that there is no evidence in the record to support the trial court's finding. (*Id.* at 15). We disagree.

We begin with our standard and scope of review in an appeal from a non-jury verdict.

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law.

*Rissi v. Cappella*, 918 A.2d 131, 136 (Pa.Super.2007) (citation omitted). "We will respect a trial court's findings with regard to the credibility and weight of the evidence unless the appellant can show that the court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence." *Ecksel v. Orleans Const. Co.*, 360 Pa.Super. 119, 519 A.2d 1021, 1028 (1987) (citation omitted).

■ Here, DeLuca asserts that the trial court erroneously assumed the amount at issue was "actually paid" by Toll when DeLuca in fact withdrew its claim prior to

trial.[3] (DeLuca's Brief, at 15).[4] DeLuca's only citation in support of this claim is to a footnote in its own Exhibit A, which reproduces the trial court's opinion of August 3, 2010. (*See id.* (citing Trial Ct. Op. 8/02/10, at 17 n. 36)). The footnote in turn refers to Plaintiff's Exhibit P1148.[5] However, Appellant does not refer to the place in the record which would support the claim that the amount at issue was withdrawn, as asserted.

Pennsylvania Rule of Appellate Procedure 2119(c) provides:

> **Reference to record.** If reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears (*see* Rule 2132) (references in briefs to the record).

Pa.R.A.P. 2119(c). Nor does DeLuca develop an argument or offer any authority in support of the claim. *See* Pa.R.A.P. 2119(a); *see also Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa.Super.2007), *appeal denied sub nom. Commonwealth v. Imes*, 603 Pa. 680, 982 A.2d 509 (2009) ("We shall not develop an argument for [the appellant], nor shall we scour the record to find evidence to support an argument; consequently, we deem this issue waived."). Accordingly, DeLuca's first claim is waived.

■ Moreover, it would not merit relief. DeLuca fails to prove an error of the trial court by the mere bald reference to the trial court's opinion. Furthermore, P–1148, a spreadsheet titled "J.J. DeLuca Company, Inc.; Naval Square Billing/Payment Analysis," does not support DeLuca's claim. DeLuca contends that "Column G3 of Exhibit P–1148 does not reflect the amount paid by Toll, but rather the amount withheld by Toll." (DeLuca's Brief at 16). However, DeLuca's interpretation conflicts on its face with the spreadsheet itself which lists "Retainage Held by Toll" at Column B, not Column G3. DeLuca fails to prove that the trial court's finding is not supported by the record.

Even if this issue were not waived, considering the evidence in a light most favorable to Toll as the verdict winner, and giving the findings of fact of the trial judge the same weight and effect as the verdict of a jury, we would find no basis to reverse the trial court's findings. *See Rissi, supra.* DeLuca's first argument is waived and would merit no relief.

■ In its second question, DeLuca challenges the award of $4,500,000.00 in punitive damages. (*See* DeLuca's Brief, at 3). DeLuca's second argument merely restates the second question as a general factual premise. (*See* Deluca's Brief, at 3, 16). However, it does not develop an independent argument of trial court error, or provide pertinent supporting authority. Accordingly, DeLuca's second issue is also waived. *See* Pa.R.A.P. 2119(a), (b).

Deluca's third, fourth, fifth, and sixth questions challenge the underlying fraud claim as insufficient to support punitive damages. (*See* DeLuca's Brief, at 3, 16–32). We disagree.

---

**3.** DeLuca raised this issue with the trial court in its post-trial motion. (*See* Post–Trial Motion, 6/17/11, at 4 ¶ 25).

**4.** DeLuca argues, apparently inconsistently, or in the alternative, that the amount at issue was "never billed" to Toll, and that "DeLuca voluntarily withdrew [ ] its claim prior to trial." (DeLuca's Brief, at 15).

**5.** DeLuca notes the trial court incorrectly cited P–1148 as "**D**–1148". (*See* Post–Trial Motion, 6/17/11, at 4 n. 3).

DeLuca's first fraud claim is that the trial court did not make a finding of liability on a cause of action for fraud. (*See* DeLuca's Brief, at 3, 16–19).

However, our review of the record reveals that Deluca's argument is demonstrably incorrect. The trial court made express and unequivocal findings of fraud, even if sometimes expressed as previous determinations when the court was addressing other issues. (*See, e.g.*, Trial Court Rule 1925(a) Opinion, 1/10/12, at 11 ("The evidence further demonstrated that the scheme to fraudulently bill the Toll Defendants was incorporated into the initial budget proposal and permeated the entire billing process, the attempts to collect, and the use of court process."), 11–12 ("fraud ... so pervasive and premeditated that the contract was merely the collateral vehicle through which the fraud was perpetrated"); Trial Ct. Op., 8/03/10, at 26 ("pervasive and significant fraud"); Trial Ct. Op., 11/16/11, at 11–12 ("fraud ... so pervasive and premeditated")). DeLuca's failure-to-find-fraud argument does not merit relief.

■ Next, DeLuca argues the trial court erred by finding Toll had not waived its claim for fraud. DeLuca maintains the fraud claim was waived for failure to include it in the TCA as a preserved claim. (*See* DeLuca's Brief, at 19–20).

First, DeLuca has failed to develop an argument in support of its waiver claim, and offers no authority at all to support it. *(See id.)*. Accordingly, this claim is waived. *See* Pa.R.A.P. 2119(a), (b).

■ Moreover, it would not merit relief. "Every contract imposes a duty of good faith and fair dealing on the parties in the performance and the enforcement of the contract." *Giant Food Stores, LLC v. THF Silver Spring Dev., L.P.*, 959 A.2d 438, 447–48 (Pa.Super.2008), *appeal de-*

*nied,* 601 Pa. 697, 972 A.2d 522 (2009) (citation omitted).

■ Accordingly, here, prior to the discovery of fraud, Toll was entitled to assume that DeLuca would perform its termination obligations in good faith and had previously performed its general contractor obligations in good faith. Therefore, Toll had no obligation to anticipate DeLuca's violation of these duties by inclusion of a separate contractual provision expressly preserving claims for fraud, and, as already noted, DeLuca offers no authority whatsoever for its claim that such a reservation was required. DeLuca's claim of waiver is waived and without merit.

■ Next, DeLuca asserts Toll's fraud claim is barred by the statute of limitations. (*See* Deluca's Brief, at 20–26). We disagree. "The law is clear that fraud or deceit tolls the statute of limitations until such time as the fraud has been discovered by the exercise of due diligence." *Rothman v. Fillette*, 503 Pa. 259, 469 A.2d 543, 546 n. 3 (1983) (citations omitted).

Here, DeLuca merely argues that Toll "knew **or should have known** ... of the **possibility of fraud** as early as July of 2006." (DeLuca's Brief, at 23) (emphases added). Under controlling Pennsylvania law, discovery of fraud is the trigger for the operation of the statute of limitations, not purported suspicion or speculation. *See Rothman, supra.* In any event, we decline to re-weigh the evidence, which was the province of the trial court as factfinder. DeLuca fails to show the trial court abused its discretion in finding that Toll's fraud claim was not tolled by a lack of due diligence. The statute of limitations argument fails.

■ Similarly, DeLuca argues the statute of limitations defense was not barred because it, DeLuca, did not actively conceal the fraud, and mere silence or non-

disclosure is not enough to toll the statute of limitations period. (*See* DeLuca's Brief, at 24–26). DeLuca baldly asserts that "during the trial, Toll failed to meet its burden of proving that DeLuca actively concealed the fraud by clear and convincing evidence." (*Id.* at 26). However, DeLuca does not present any citation to the record to support its claim, or to show where Toll's evidence was deficient. Therefore, DeLuca's claim is waived. *See* Pa.R.A.P. 2119(c).

██ Moreover, the claim would not merit relief. We consider the evidence in a light most favorable to the verdict winner, and accord the trial court's findings the same weight and effect on appeal as the verdict of a jury. *See Rissi, supra* at 136. Here, the trial court found that:

> The **active concealment** of [ ] DeLuca's fraudulent conduct, which occurred **at its highest levels of management**, and the **active pursuit of its claim** for $1,021,974.45 as if legitimate through the presentation of testimony at trial and an additional $560,000.00 as if legitimate through to verdict in the face of unambiguous sworn testimony of fraudulent billing **constitutes active concealment** which bars any statute of limitations defense.

(Trial Court Rule 1925(a) Opinion, 1/10/12, at 8 (emphases added)). DeLuca only argues it did nothing to lull Toll into relaxing its vigilance. (*See* DeLuca's Brief, at 25–26). It attempts to shift the burden to Toll for lack of vigilance. (*See id.* at 26). It does nothing to refute the trial court's findings. (*See id.*). We defer to the fact findings of the trial court. DeLuca's no-active-concealment defense would not merit relief.

██ Next, DeLuca argues Toll's claim of fraud is barred by the gist of the action doctrine. (*See* DeLuca's Brief, at 26–32). Citing *Reed v. Dupuis*, 920 A.2d 861

(Pa.Super.2007) (holding that gist of the action doctrine did not preclude recovery under theory of negligence in landlord-tenant case) and *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10 (Pa.Super.2002), DeLuca maintains that Toll's claim for fraud was merely collateral to its contract claims, and, therefore, barred. We disagree.

██ "[T]he question of whether the gist of the action doctrine applies is an issue of law subject to plenary review." *Reed, supra* at 864 (quoting *eToll, supra* at 15).

> [A] claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts.
>
> ... [C]ourts have held that the doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

*Id.* at 864 (citation omitted).

> [A]lthough mere non-performance of a contract does not constitute a fraud[,] it **is possible that a breach of contract also gives rise to an actionable tort[.]** To be construed as in tort, however, the wrong ascribed to defendant must be the gist of the action, the contract being collateral. The important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus. In other words, a claim should be limited to

a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts.

*eToll, supra* at 14–15 (citations, internal quotation marks and footnote omitted; emphasis added).

Here, DeLuca posits that under the four conditions enumerated in *Reed,* because Toll's allegations arise out of fraudulent invoices, the gist of the action doctrine bars the fraud claims. (*See* DeLuca's Brief, at 30–32). DeLuca's reliance on *Reed* is misplaced.

First, it is patently obvious that Toll's fraud claim did not arise "solely from a contract between the parties." *Reed, supra* at 864. The fraud did not arise out of the **performance** of the contract. To the contrary, the essence of the fraud was precisely that DeLuca submitted invoices for work which had nothing to do with the performance of the contract. DeLuca's fraudulent scheme of bogus invoices as described in the record was primarily, if not solely, a mere mechanism for DeLuca to pay off pre-existing obligations to its sub-contractors for unrelated, extra-contractual, non-Toll work performed at other locations.

Similarly, the duty breached was not created by the contract, and liability did not stem from a contract. At root, Toll was merely a convenient cash box to fund the fraud. DeLuca had an independent, societal duty not to defraud Toll, or any other comparably situated party. *See, e.g.,* 18 Pa.C.S.A. § 4107(a)(2) ("A person commits an offense if, in the course of business, the person: . . . sells, offers or exposes for sale, or delivers less than the represented quantity of any commodity or service"). The mere incidental employment of a contractual provision as the vehicle or instrument to perpetrate a fraud does not immunize a perpetrator from liability for fraud.

Finally, the tort claim does not "duplicate[ ] a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *Reed, supra* at 864. The success of Toll's fraud claim is not dependent on the terms of the Naval Square contract, or a breach in the performance thereof. Proof of the fraud is an independent and self-sufficient basis for recovery. *Reed* offers DeLuca no basis for relief.

The present case is readily distinguishable from *eToll* as well. Most notably, the fraud alleged in *eToll* was fraud arising from the performance of the contract itself. In *eToll,* the appellant, a software developer, engaged the appellees, a marketing firm and its principals, to market and advertise its e-mail product. *See eToll, supra* at 12. The fraud asserted was that the appellees told the appellant that they had the knowledge, expertise, and experience to advertise and market the product properly, when in fact they did not. *See id.* Furthermore, the individual appellees executed several schemes designed to obtain money fraudulently from eToll, including "contracting for goods and services which were unauthorized, unnecessary, excessive or in **some** cases entirely fictitious"; and "accepting payments from eToll for services which were not actually performed." *Id.* (emphasis added).

Here, again, the fraud was not in the performance of the contract. Rather, the fraud was in using the contract as a pretext, or vehicle, to bill Toll for totally unrelated services at other sites. DeLuca did not perform the work at issue fraudulently; it did not perform it for Toll at all.

 In this context it is important to bear in mind the stated social policy behind the gist of the action doctrine:

Generally, the doctrine is designed to maintain the conceptual distinction between breach of contract claims and tort claims. As a practical matter, the doctrine precludes plaintiffs from re-casting **ordinary** breach of contract claims into tort claims.

\* \* \*

 [A]lthough they derive from a common origin, distinct differences between civil actions for tort and contract breach have developed at common law. Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals. . . . To permit a promisee to sue his promisor in tort for breaches of contract *inter se* would erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions.

*Id.* at 14 (citations omitted; emphasis added).

Further, the *eToll* Court, after reviewing several federal decisions it found to be in support of its disposition, concluded:

These courts have **not** carved out a categorical exception for fraud, and have not held that the duty to avoid fraud is always a qualitatively different duty imposed by society rather than by the contract itself. Rather, **the cases seem to turn on the question of whether the fraud concerned the performance of contractual duties.** If so, then the alleged fraud is generally held to be merely collateral to a contract claim for breach of those duties. **If not, then the gist of the action would be the fraud, rather than any contractual relationship between the parties.**

*Id.* at 19 (first emphasis in original; subsequent emphases added).

In this appeal, after review, we conclude that the fraud claims do not concern the performance of the duties under the contract. To the contrary, the fraud is that the invoices at issue were bogus billings for unrelated services independent of the contract. The trial court properly concluded that invoice billing under the contract was merely the vehicle for the fraud. (*See* Trial Ct. Op., 11/16/11, at 10). Neither *Reed* nor *eToll* require that we treat pretextual billing as transforming a fraudulent transaction into one arising solely from a contract between the parties. DeLuca's gist of the action argument merits no relief.

Next, DeLuca argues that punitive damages cannot be awarded for a breach of contract claim. (*See* DeLuca's Brief, at 32–33). The assertion is incomplete. This Court explained in *eToll* that, "although mere nonperformance of a contract does not constitute a fraud[,] **it is possible that a breach of contract also gives rise to an actionable tort[.]**" *eToll, supra* at 14 (emphasis added). It is apparent that DeLuca's argument ignores the independent fraud claim, or incorrectly assumed that it would prevail on its assertion that a fraud claim was barred. We hold the opposite. DeLuca's seventh issue does not merit relief.

 In its eighth claim, DeLuca asserts that the trial court's punitive damages award is prohibited by the Fourteenth Amendment of the United States Constitution. (*See* DeLuca's Brief, at 33–40). We disagree.

Our standard of review in assessing an award of punitive damages is well-settled.

Punitive damages will lie only in cases of outrageous behavior, where defendant's egregious conduct shows either an evil motive or reckless indifference to the rights of others. Punitive damages

are appropriate when an individual's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton, or reckless conduct.

The determination of whether a person's actions arise to outrageous conduct lies within the sound discretion of the factfinder and will not be disturbed by an appellate court so long as that discretion has not been abused.

*Pestco, Inc. v. Associated Prods., Inc.*, 880 A.2d 700, 709 (Pa.Super.2005) (citations and internal quotation marks omitted). "It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003) (citation omitted).

In this appeal, DeLuca concedes that the decision to award punitive damages, and the amount, is within the discretion of the fact-finder. (*See* DeLuca's Brief, at 34). Nevertheless, it argues that the award of punitive damages here is unsupported by the record, patently unreasonable, and constitutionally unacceptable. (*See id.* at 34–40). DeLuca again raises the issue of the withdrawn billings, and argues it took remedial action on discovery of the fraud. (*See id.* at 38–39). Thus, it contends its degree of reprehensibility does not justify $4.5 million in punitive damages. (*See id.* at 35–37). Finally, DeLuca asserts the ratio of punitive damages to compensatory damages was constitutionally impermissible. (*See id.* at 37–40). DeLuca's arguments do not merit relief.

DeLuca correctly argues that the conduct at issue "involved an economic tort and not a tort that inflicted an injury to health or safety." (*Id.* at 40). However, there is little else to commend DeLuca's actions. DeLuca concedes, in effect, that fraud existed, at least to the extent it seeks to take credit for adopting remedial action "[o]nce it became aware of the potential fraudulent charges," and for withdrawing at least certain claims after fraud had been discovered and presented to the trial court. (*Id.* at 37).

Nonetheless, the trial court found that "[t]he evidence ... demonstrated that the scheme to fraudulently bill the Toll Defendants was incorporated into the initial budget proposal and permeated the entire billing process, the attempts to collect, and the use of court process." (Trial Court Rule 1925(a) Opinion, 1/10/12, at 11).

■ Furthermore, DeLuca misapprehends our standard of review, which is not to re-weigh the evidence considered by the trial court, but to determine if the trial court abused its discretion. *See Pestco, supra.* We conclude that the trial court's finding is supported by the record, and it properly exercised its discretion. DeLuca's claim does not merit relief.

■ Finally, on punitive damages, DeLuca argues that the ratio of punitive damages to compensatory damages is constitutionally impermissible, citing *Campbell.* (*See* DeLuca's Brief, at 37–40).[6] Specifically, DeLuca assumes that if the proper measure of damages is $308,601.00, then the ratio of punitive damages ($4.5 million) to compensatory damages is 14.58, "which well exceeds the recommended single digit ratio." (*Id.* at 39). We disagree.

---

**6.** *Campbell*, the United States Supreme Court reversed a punitive damages award of 145 times the compensatory damages of one million dollars. *See Campbell, supra* at 429, 123 S.Ct. 1513.

This Court recently analyzed *State Farm* [*supra*] in *Hollock v. Erie Ins. Exch.*, 842 A.2d 409, 420 (Pa.Super.2004) *(en banc)*, [*appeal dismissed as improvidently granted*, 588 Pa. 231, 903 A.2d 1185, 1186 (Pa.2006)] and cited *State Farm* for the proposition that "although states possess discretion over the imposition of punitive damages, there are procedural and substantive constitutional limitations on these awards." *Id.* Further, we noted that under Pennsylvania law the "size of a punitive damages award must be reasonably related to the State's interest in punishing and deterring the particular behavior of the defendant and not the product of arbitrariness or unfettered discretion." *Id.* at 419 (citation omitted). The *Hollock* court reiterated three guideposts an appellate court should consider in determining whether an award of punitive damages violates due process:

(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*Pestco, supra* at 709–10 (some citations omitted).

"[B]ecause there are no rigid benchmarks that a punitive damages award may not surpass, ratios greater than those we have previously upheld may comport with due process[.]" *Campbell, supra* at 425, 123 S.Ct. 1513.

Here, leaving aside the problem that DeLuca treats an expressly limited "recommended single digit ratio" in *Campbell* as a constitutionally binding requirement

in this case, the argument also fails because the trial court determined that the proper measure of compensatory damages was $1,581,974.45 of fraudulent billing, not $308,601.00. (*See* Trial Court Rule 1925(a) Opinion, 1/10/12, at 7). The trial court correctly calculates that based on these numbers, the ratio is 2.84. *(See id.).* DeLuca's argument is frivolous. DeLuca's argument fails.

DeLuca's ninth question claims a mathematical error by the trial court. (*See* DeLuca's Brief, at 40).[7] DeLuca argues that the trial court double counted certain line items for fraudulent billings, because DeLuca's retained expert had previously deducted $251,399 as an adjustment reflected in P1148, "unfairly forc[ing] DeLuca to pay twice[.]" (*Id.* at 42).

▉▉▉▉▉ We review a challenge to the calculation of damages for abuse of discretion. *See Liss & Marion, P.C. v. Recordex Acquisition Corp.,* 937 A.2d 503, 516 (Pa.Super.2007), *affirmed,* 603 Pa. 198, 983 A.2d 652 (2009).

When reviewing an award of damages, we are mindful that:

The determination of damages is a factual question to be decided by the fact-finder. The fact-finder must assess the testimony, by weighing the evidence and determining its credibility, and by accepting or rejecting the estimates of the damages given by the witnesses.

Although the fact-finder may not render a verdict based on sheer conjecture or guesswork, it may use a measure of speculation in estimating damages. The fact-finder may make a just and reasonable estimate of the damage based on relevant data, and in such circumstances

---

**7.** DeLuca notes that it challenged the trial court's calculation of damages in its post-trial motions, which the trial court denied. (*See* DeLuca's Brief, at 12).

may act on probable, inferential, as well as direct and positive proof.

*Id.* at 514 (citations omitted).

Accordingly, in resolving claims of **fraudulent** invoices, which of their nature are intentionally designed to conceal or obscure the truth, it was particularly the province of the trial court as fact-finder to weigh the evidence, accept all, part, or none of it, and assess the credibility of the testifying witnesses.

DeLuca's claim of error merely cites to a line item adjustment of $251,399.00 for Brookside Construction in P–1148, and concludes, with no other substantiation or explanation, that the trial court erred.[8] (*See* DeLuca's Brief, at 41). DeLuca also asserts that because of its claimed double payment reduction, the calculation of the 3.5% general contractor's' fee should also be modified. (*See id.* at 41–42). DeLuca offers no other support for its claim. We will not disturb the trial court's computation or its weighing of the evidence and credibility on this basis. On review we find no abuse of discretion in the trial court's determination of damages. DeLuca's claim does not merit relief.

In DeLuca's tenth, eleventh, twelfth, and thirteenth questions, it challenges the trial court's denial of interest, attorneys' fees, and costs under CASPA. Chiefly, DeLuca asserts that it is entitled to interest on untimely payments due and to attorneys' fees as the prevailing party. (*See* DeLuca's Brief, at 42–43). We address DeLuca's CASPA claims together.

Section 512(b) of CASPA provides that: "Notwithstanding any agreement to the contrary, the substantially prevailing party in any proceeding to recover any payment under this act shall be awarded a reasonable attorney fee in an amount to be determined by the court or arbitrator, together with expenses." 73 P.S. § 512(b).

 "While the mandatory language of section 512(b) requires an award of attorney's fees to a **substantially prevailing party,** the issue of whether any party to a lawsuit **substantially prevailed** is left to the trial court's discretion." *Imperial Excavating & Paving, LLC v. Rizzetto Constr. Mgmt., Inc.,* 935 A.2d 557, 564 (Pa.Super.2007) (quoting *Zavatchen v. RHF Holdings, Inc.,* 907 A.2d 607, 610 (Pa.Super.2006), *appeal denied,* 591 Pa. 685, 917 A.2d 315 (2007)) (internal quotation marks omitted) (emphasis in original).

Accordingly, DeLuca's assertion has two major problems. First, the trial court expressly found that DeLuca had **not** substantially prevailed. (*See* Order, 3/09/10, at unnumbered page 2). Secondly, after the award of punitive damages to Toll following remand from this Court, it is patently obvious that Toll prevailed, not DeLuca. (*See* Order, 11/16/11).

 DeLuca claims on appeal that it defeated 99.92% of Toll's claims, and proved 93.57% of its own. (*See* DeLuca's Brief, at 45). However, it is the trial court's finding which controls, not DeLuca's. *See Imperial Excavating, supra* at 564. Furthermore, no mathematical gyrations by DeLuca can alter the reality that the punitive damages awarded to Toll after this Court's remand left DeLuca with no net damages at all. (*See* Order, 11/16/11). Therefore, on review we find that the trial court's denial of interest, costs, and attorneys' fees is supported by the record and proper. The trial court did not abuse its discretion. All of DeLuca's CASPA claims fail.

---

**8.** DeLuca asserts that its expert had already deducted this item but offers no citation to the record other than P–1148 for this assertion. (*See* DeLuca's Brief, at 41).

■ Similarly, because DeLuca was not entitled to any net award after the trial court awarded punitive damages to Toll, DeLuca's alternative claims for interest under the Restatement (Second) of Contracts, and statutory interest under 42 Pa.C.S.A. § 8101 both also fail. (*See* DeLuca's Brief, at 52–55). DeLuca did not receive "a judgment for a specific sum of money." 42 Pa.C.S.A. § 8101. Toll did. DeLuca's fourteenth and fifteenth claims fail.

■ Finally, DeLuca asserts a sixteenth assignment of error for the trial court's failure to award all costs incurred in the Naval Square project. (*See* DeLuca's Brief, at 4). DeLuca fails to present or develop an independent argument in support of this claim. (*See id.* at 58–59). Accordingly, it is waived. *See* Pa.R.A.P. 2119(a), (b). It also would fail for the reasons already discussed.

All of Toll's questions as Cross-Appellant involve challenges to DeLuca's claims; Toll presents no independent assertions of trial court error for our review. (*See* Toll's Brief, at 3–4). Accordingly, our disposition of DeLuca's claims resolves the counter-questions raised by Toll. Furthermore, in light of our disposition, we need not address Toll's alternative claims of waiver, and we decline to do so. Toll also filed a motion to dismiss and to quash matters not previously raised. We dismiss the motion as moot.

In its Rule 1925(a) opinion, in addition to the clerical error already noted, the trial court concedes that it "inartfully addressed" the $560,000 Brookside billing in previous opinions, but explains its reasoning for entering that amount as a verdict in favor of Toll on its counterclaim. (*See* Trial Court Rule 1925(a) Opinion, 1/10/12, at 6–7). We find no abuse of discretion in the trial court's award.

The basis of our disposition differs from that of the trial court in some respects. "Nevertheless, we are not bound by the rationale of the trial court and may affirm on any basis." *Richmond v. McHale,* 35 A.3d 779, 786 n. 2 (Pa.Super.2012) (citation omitted).

Order affirmed. Motion to dismiss and to quash dismissed as moot.