J-A12023-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE:  LIEN ASSERTED AGAINST MATTHEW HEFFRAN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  MATTHEW HEFFRAN | |
| | No. 2140 EDA 2013 |

Appeal from the Judgment Entered October 30, 2013
in the Court of Common Pleas of Pike County
Civil Division at No.: 1389-2012

BEFORE:  SHOGAN, J., FITZGERALD, J.[*], and PLATT, J.[**]

DISSENTING MEMORANDUM BY PLATT, J.:    **FILED SEPTEMBER 03, 2014**

I respectfully dissent.  In my view, Appellant failed to present clear and convincing evidence of fraud, or any of his additional claims.  I discern no abuse of discretion or error of law.  Therefore, I would conclude, under our standard of review, that the trial court properly granted a directed verdict in favor of Appellee.  Accordingly, I would affirm.

To prove fraud, Appellant was required to establish the following elements:

_____

[*] Former Justice specially assigned to the Superior Court.

[**] Retired Senior Judge assigned to the Superior Court.

(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

***Weissberger v. Myers***, 90 A.3d 730, 735 (Pa. Super. 2014) (citation omitted). From my review of the record, Appellant failed to prove any of these elements.

"The . . . burden of proof to prove [a] fraud claim is clear and convincing evidence. Clear and convincing evidence is the **highest burden in our civil law** and requires that the fact-finder be able to come to clear conviction, without hesitancy, of the truth of the precise fact in issue." ***Id.*** (citation omitted, emphasis added).

The learned Majority acknowledges that evidence of fraud must be clear and convincing. (***See*** Majority, at *5). Nevertheless, assuming, (without citation to authority, or the record), that the intent of Appellee remains at issue, it concludes that "reasonable minds could disagree on the outcome of the case and that a verdict for Appellee was not a certainty." (***Id.*** at 7). In effect, by assuming that the possibility of a plaintiff's verdict is dispositive, the Majority reduces Appellant's burden of proof from clear-and-convincing evidence to a mere hypothetical uncertainty.

The Majority's conclusion thus disregards both our standard of review, (for abuse of discretion or error of law), and Appellant's failure to meet the well-settled clear-and-convincing standard for his burden of proof.

Furthermore, in my view, by not addressing the six elements required to establish fraud, and relying instead on an incidental mistake of the trial court, (**see infra** at *4 n.3), the learned Majority errs in disregarding the burden of proof for the claim on which all of Appellant's additional claims are, in reality, predicated.

Similarly, I can discern no error of law or abuse of discretion in the trial court's directed verdict on Appellant's remaining claims. As noted by the learned Majority, punitive damages are appropriate only in cases of outrageous behavior where the defendant's egregious conduct shows either an evil motive or reckless indifference to the rights of others. Appellant's denials notwithstanding, all of his claims, including the punitive damages claim, rely on the same predicate, the purported attempt to collect on the allegedly fraudulent miscalculation of the subrogation lien. Absent this claim, no others remain.

Taking the evidence here in the light most favorable to Appellant as the non-moving party, there was vigorous disagreement, most notably between counsel, and various apparent mistakes on both sides, over calculation of the **amount** of the subrogation lien (representing how much Appellant had to reimburse the workers compensation carrier, out of the settlement he reached with the tortfeasor, for funds the insurer had already advanced to him). There is no dispute that Appellant owed **some** amount to Appellee to satisfy the subrogation lien.

The record is replete with instances of dilatory and uncooperative behavior by Appellant's counsel. It is readily inferable from the record that counsel's dismissive and patronizing communications to carrier's counsel, as well as his apparent delay in reporting the settlement with the tortfeasor (reported not to carrier's counsel, but to a remote office in Kentucky), not to mention his apparent refusal to disclose his attorney's fee and costs, (making it impossible to calculate an exact amount for repayment of the subrogation lien), engendered aggressive strategic responses.

What is missing from the record, not to mention Appellant's argument on appeal, is actual factual evidence of Appellee's alleged egregious conduct, evil motive or reckless indifference.

In my opinion, this deficit was not remedied by the simple expedient of having a *de facto* expert witness,[1] who only reviewed the limited documentation[2] provided to him by counsel for Appellant, proclaim repeatedly that Appellee's conduct was outrageous. With no personal

_____

[1] James C. Haggerty, Esq. testified over the objection of counsel for Appellee. (**See** N.T. Trial, 6/18/13, at 58-59). It is undisputed that he had no direct involvement in the underlying case. The trial court stresses that Attorney Haggerty was never formally qualified as an expert witness. (**See** Trial Court Opinion, 9/12/13, at 6). The record confirms that he was never formally offered, let alone accepted, as an expert witness.

[2] *E.g.*, Appellant's counsel did not provide Haggerty with his fee agreement, documenting the attorney's fee to be deducted, a critical component of the final calculation of the subrogation amount, and a persistent issue in the litigation. (**See** N.T. Trial, at 101).

involvement in the case, Attorney Haggerty could not testify as a fact witness. The record confirms that Haggerty was never properly admitted as an expert. Attorney Haggerty's personal opinions are no substitute for proof of facts. Leaving aside Haggerty's personal opinions, there was no genuine issue of material fact, which would require that any of the claims at issue go to the jury.[3]

Moreover, I would conclude that all of Appellant's claims on appeal are waived for failure to develop an argument supported by pertinent citation to authority. Mere recitation of multiple cases, and appendage of a blanket conclusion, without specific, pertinent analysis applying the principles of the cited cases to the case on appeal, is insufficient to develop an argument or

_____

[3] I agree with the learned Majority that the trial court incorrectly relied on Attorney Haggerty's reference to one incident as a "mistake" for an overall conclusion. (Majority, at 6). This was a specific concession (used, in the event, to commend Appellant's counsel for his professional restraint in not taking advantage). (*See* N.T. Trial, at 80). However, in the paragraph following the one cited by the Majority, the trial court qualifies its conclusion by the limiting words, "at least part." (Trial Ct. Op., at 5). Furthermore, for completeness, this was not the only reference to a mistake. Mr. Haggerty did not dispute that in his direct testimony he had used the term mistake **seven** times, which he characterized as giving Appellee "the benefit of the doubt." (*See* N.T. Trial, at 101). To be sure, Attorney Haggerty took many other opportunities to condemn Appellee's various alleged actions, in his personal opinion, as "outrageous." Nevertheless, Appellant established no **factual evidence** of the fraud claims at issue. Despite the trial court's apparent over-reliance on Attorney Haggerty's limited concession, the conclusion that Appellant failed to produce clear and convincing evidence of fraud remains unimpeached. We may affirm the decision of the trial court on any basis, provided it is legally correct. *See Matharu v. Muir*, 86 A.3d 250, 261 (Pa. Super. 2014).

to enable meaningful appellate review. (**See** Appellant's Brief, at 13-15); **see also** Pa.R.A.P. 2119(a), (b). Similarly, a conclusory assertion that "[i]t has been shown repeatedly in the record," (**see** Appellant's Brief, at 15), fails to comply with Pa.R.A.P. 2119(c), **Reference to record**. "We shall not develop an argument for [the appellant], nor shall we scour the record to find evidence to support an argument; consequently, we deem this issue waived." **J.J. DeLuca Co., Inc. v. Toll Naval Associates**, 56 A.3d 402, 411 (Pa. Super. 2012) (citation omitted). I would conclude here that Appellant failed to present a case for the jury at trial, and failed to develop a pertinent argument on appeal. The trial court properly granted a directed verdict under our standard of review.

Accordingly, I respectfully dissent.[4]

_____

[4] For the sake of completeness, I note my disagreement with the learned Majority's decision to treat all three of Appellant's claims interchangeably ("concurrently"). (Majority, at 4). Each of Appellant's issues raises a distinct legal claim, namely, clear and convincing evidence, sufficiency of evidence for the additional (non-fraud) claims, and whether there were genuine issues of material fact. (**See** Appellant's Brief, at 5). However, as none of the separate issues merit relief on any other basis, it is not necessary to address them further.