J-A29042-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHARLES A. KNOLL, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| EUSTACE O. UKU, YALE DEVELOPMENT | : | |
| & CONTRACTING, INC. AND EXICO, | : | |
| INC., | : | |
| | : | |
| Appellants | : | No. 2038 WDA 2014 |

Appeal from the Judgment entered on November 19, 2014
in the Court of Common Pleas of Allegheny County,
Civil Division, No. GD-12-007435

BEFORE:  FORD ELLIOTT, P.J.E., BOWES and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED JANUARY 19, 2016**

Eustace O. Uku ("Uku"), Yale Development & Contracting, Inc. ("Yale"), and Exico, Inc. ("Exico") (collectively "the Appellants"), appeal from the Judgment entered in favor of Charles A. Knoll ("Knoll") in the amount of $175,882.08.  We affirm.

In 2004, Uku and Knoll created Yale, a construction company, which worked on various projects, including The Meadows Racetrack and Casino ("Meadows"), the Carpenter's Training Facility, and the Consol Energy Center.  Uku was the president of Yale, and Knoll was the vice president of Yale.  Pursuant to an agreement, Knoll and Uku split the profits of Yale, with Knoll receiving 49% and Uku receiving 51%.  The agreement also stated that Uku and Knoll could only receive funds from Yale as a distribution of

profit. Between 2008 and 2012, Uku withdrew or received $59,983.00 from Yale's various accounts. Between 2008 and 2012, Exico, a corporation of which Uku is the president and sole shareholder, withdrew $228,565.35 from Yale's various accounts. Knoll received no payments during this period.

On April 27, 2012, Knoll filed a Complaint against Yale and Uku, alleging that Knoll was due his share of profits from Yale. Yale and Uku filed an Answer, denying Knoll's allegations. On June 10, 2013, Knoll filed an Amended Complaint against the Appellants, alleging that profits from Yale were improperly diverted to Uku and Exico. The Appellants filed an Answer and New Matter to the Amended Complaint.[1] Following a non-jury trial and the filing of proposed findings of fact and conclusions of law by both parties, the trial court issued a verdict in favor of Knoll.[2] The Appellants filed a Motion for Post-Trial Relief, which the trial court denied. Subsequently, a Judgment in the amount of $175,882.09[3] was entered in favor of Knoll and against the Appellants.

The Appellants filed a timely Notice of Appeal and a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement.

_____

[1] The Appellants filed the Answer and New Matter the day before the start of trial.

[2] The trial court issued an amended verdict on July 17, 2014, to correct the caption in the case.

[3] The trial court found that Uku and Exico had taken $288,548.35 from Yale's accounts and that Knoll was entitled to 49% of this total - $141,388.69. The trial court further awarded Knoll interest totaling $33,564.19.

On appeal, the Appellants raise the following questions for our review:

I.    Whether the trial court's July 15, 2014 amended non-jury verdict is inconsistent with the uncontested facts presented by the parties at trial?

II.   Whether the trial court's amended non-jury verdict fails to account for "direct expenses" incurred by [Yale]?

III.  Whether the trial court's amended non-jury verdict fails to account for "indirect expenses" incurred by [Yale]?

IV.   Whether the trial court's amended non-jury verdict ignores the testimony of … Knoll's own witness?

V.    Whether the trial court's amended non-jury verdict ignored that … Knoll failed to "undertake" or provide "work on joint projects" for [Yale]?

Brief for Appellants at 5 (some capitalization omitted).[4]

Our standard of review is as follows:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law.

We will respect a trial court's findings with regard to the credibility and weight of the evidence unless the appellant can

---

[4] We note that in the Argument section of their brief, the Appellants have not cited to any relevant case law or statutory authority to support their claims on appeal. **See In re Estate of Whitley**, 50 A.3d 203, 209 (Pa. Super. 2012) (stating that "[t]his Court will not consider the merits of an argument which fails to cite relevant case or statutory authority.") (citation omitted). Despite this failure, we will not deem the Appellants' claims to be waived.

show that the court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence.

*J.J. DeLuca Co. v. Toll Naval Assocs.*, 56 A.3d 402, 410 (Pa. Super. 2012) (citations and quotation marks omitted).

In their first claim, the Appellants contend that the trial court's amended verdict is inconsistent with the uncontested facts presented at trial. Brief for Appellants at 9. The Appellants argue that under the agreement between Knoll and Uku, the profits from Yale would only be distributed to the parties after 10% of the profits had been "plowed back" into Yale. *Id*. The Appellants assert that Knoll would only be entitled to a 49% share of the remaining 90% and thus, the trial court erred in finding the total profits at issue to be $288,548.35 in rendering the verdict. *Id*. The Appellants claim that Knoll's share of the profits should have been $127,008.00. *Id*.

Here, the agreement stated the following in relevant part:

3. On projects undertaken by us through [Yale], profits after all project[-]related expenses will be allocated as follows:

    a. 10% will be plowed back into [Yale;]

    b. The rest of the profits will be divided with 51 percent to [Uku] and 49 percent to [Knoll].

Agreement, 8/4/04, at 1-2 (unnumbered).

The Appellants do not dispute that a total of $288,548.35 was transferred from Yale to Uku and Exico. *See* Brief for Appellants at 9; *see also* N.T., 3/12/14, at 110-14 (wherein Knoll, citing to Exhibit J, which summarized the transfers and withdrawals by Uku and Exico, stated that a

total of over $288,000 was taken improperly from Yale). The trial court found that although the contract between the parties "provided that only 90% of the profits were to be distributed to [Knoll] and Uku, Yale was defunct at the time of trial and [Knoll] is therefore entitled to 49% of the *entire* amount converted by Uku and Exico, plus interest." Trial Court Opinion, 2/13/15, at 4 (emphasis in original). The trial court utilized the interest calculation on the funds taken between 2008 and 2012, as set forth in Knoll's Proposed Findings of Fact and Conclusions of Law, to establish that the interest owed totaled $33,564.19. **See id**. at 2; Findings of Fact and Conclusions of Law, 6/11/14, at 38.

Here, because Yale is no longer a functioning business and 10% of the profits could not be plowed back into Yale, the trial court properly determined that the profits should be distributed to the shareholders of the company. Further, there is record support for the Appellants' claim that they, alone, are entitled to keep the 10% of profits that would have been reinvested into Yale. Moreover, the Appellants have failed to demonstrate that the trial court's calculation as to the profits and interest owed to Knoll was manifestly erroneous.[5] **See J.J. DeLuca Co.**, 56 A.3d at 410. Thus, the trial court's distribution of the profits to Uku and Knoll in the amount

---

[5] The Appellants have not provided an alternative interest calculation. Instead, in their brief, the Appellants simply argue that the award was more than $30,000 too high, without any reference to the interest calculation. **See** Brief for Appellants at 10 n.1. Accordingly, the Appellants have failed to demonstrate an error in this calculation.

specified by the agreement is supported by the record and its legal conclusion is sound.

We will address the Appellants' next two claims together, as they both relate to alleged expenses incurred by Yale. In their second claim, the Appellants contend that the trial court's amended verdict failed to account for "direct expenses" incurred by Yale. Brief for Appellants at 11. The Appellants argue that Yale only worked on five projects between 2008 and 2011, and that to complete the projects, Yale was required to pay employees' wages, cost of materials, insurance costs, and union contributions. *Id*. at 11-12. The Appellants assert that the total gross profits after, deducting these "direct expenses," would have been $169,157.19. *Id*. at 12-13.

In their third claim, the Appellants contend that the trial court's amended verdict erroneously failed to account for "indirect expenses" incurred by Yale, including tax obligations, administrative expenses, office rental costs, bidding, and billing. *Id*. at 14. The Appellants argue that Uku, who has been involved in the construction industry since 1983, utilized accepted industry standards in determining these expenses. *Id*. at 14-15. The Appellants claim that as a result of the "indirect expenses," Yale actually suffered net losses in the amount of $42,269.82. *Id*. at 15.

Here, the Appellants rely solely upon Uku's testimony and an exhibit titled "Total Gross Profit Summary," which identified Yale's profits and

expenses.[6]  **See** N.T., 3/12-13/14, at 165-84.  However, the trial court found Uku to be "an evasive witness whose testimony was often contradictory."  Trial Court Opinion, 2/13/15, at 4.  Moreover, the Appellants have not demonstrated that the exhibit upon which Uku based his testimony was an accurate summary of Yale's revenues and expenses.  **See** Pa.R.A.P. 2119(a); **see also** Trial Court Opinion, 2/13/15, at 4 (stating that the records that Uku "maintained on behalf of Yale contained numerous errors."); **id**. at 5 (finding that the gross revenues stated in the exhibit were not supported by reliable evidence).  In point of fact, the Appellants vouched for the accuracy of Yale's QuickBooks[7] detailed records, which were introduced at trial as Exhibit J and extensively set forth the Yale's revenues and expenses.  **See** N.T., 3/12-13/14, at 109-10; **see also Coleman v. Wyeth Pharm., Inc.**, 6 A.3d 502, 524 (Pa. Super. 2010) (stating that

---

[6] This exhibit was provided to Knoll the day before trial.  **See** N.T., 3/12-13/14, at 7; **see also** Trial Court Opinion, 2/13/15, at 4 (noting that the Appellants "were guilty of repeated discovery violations.").  The exhibit included a detailed breakdown of the costs and profits of the Meadows project; however, the remaining projects only included a single line indicating the totals of the costs and profits.  **See** Total Gross Profit Summary, at 1-3 (unnumbered).  Uku testified that the exhibit was incomplete and filed late because of time and money constraints, and because various documents had been destroyed.  **See** N.T., 3/12-13/14, at 238-39, 344-47; **see also Clark v. Philadelphia Coll. of Osteopathic Med.**, 693 A.2d 202, 204 (Pa. Super. 1997) (stating that "[w]here evidence which would properly be part of a case is within the control of the party in whose interest it would naturally be to produce it, and, without satisfactory explanation he fails to do so," an inference that it was unfavorable to the party may be drawn).

[7] QuickBooks, a Microsoft-based software product, is an accounting system used by small construction companies.  N.T., 3/12-13/14, at 109.

"[s]tatements of fact by one party in pleadings, stipulations, testimony, and the like, made for that party's benefit, are termed judicial admissions and are binding on the party."). The QuickBooks records demonstrated that contrary to the Appellants' arguments, Yale was paying all of its expenses, and that the direct and indirect expenses did not require a payment from the profits. *See* Trial Court Opinion, 2/13/15, at 4. Thus, based upon the foregoing, we conclude that the Appellants have failed to meet their burden in demonstrating that the trial court erred in rendering the amended verdict. *See id*. (stating that "[w]hile it may be that further expenses were incurred by Yale, they were not satisfactorily shown at trial by either Uku's testimony or [the Appellants'] documentary evidence.").

In their fourth claim, the Appellants contend that trial court improperly ignored the testimony of Fred Episcopo ("Episcopo"), President of Wyatt, Inc. Brief for Appellants at 16, 17 n.4. The Appellants argue that Episcopo, who has worked in the construction industry for more than forty years, testified that to calculate profits, it was proper to deduct direct and indirect expenses from the gross profits. *Id*. at 17 n.4. The Appellants assert that Episcopo "scoffed" at Knoll's calculation of profits as Yale would have generated a 29.66% profit margin. *Id*. at 16. The Appellants claim Episcopo's testimony indicates that the profit margin for most construction companies is between 5% and 10%, and that the award to Knoll should have been much lower. *Id*. at 16-17.

Here, the Appellants again rely upon the "Total Gross Profit Summary" to demonstrate that Yale had gross profits of $970,889.61, and thus a profit margin of 29.66%, based upon the award to Knoll. Appellants' Proposed Findings of Fact and Conclusions of Law, 6/11/14, at 1-3. However, the trial court found that the Appellants' "29% profit figure used in their questioning of Episcopo was based on gross revenues of $970,889.61, a figure [the Appellants] failed to establish with reliable evidence." Trial Court Opinion, 2/13/15, at 5. Moreover, the trial court was not bound to accept all of Episcopo's testimony in this regard. *See id*. (stating that the court is not "bound to accept all of the testimony of any witness, expert, or otherwise."); *see also J.J. DeLuca Co.*, 56 A.3d at 410. We will not disturb the trial court's credibility findings and conclude that the Appellants' claim is without merit.

In their final claim, the Appellants contend that the trial court improperly ignored the fact that Knoll did not "undertake" or provide "work on joint projects" for Yale, in violation of the agreement. Brief for Appellants at 18-20. The Appellants argue that Uku obtained all of the business for Yale and that Knoll had no role in any of the projects. *See id*.; *see also id*. at 19 (wherein the Appellants assert that Knoll was unaware that Yale had been hired to conduct work on two separate projects).

Knoll testified that he was involved in all of the projects undertaken by Yale. *See* N.T., 3/12-13/14, at 93; *see also id*. (stating that the agreement

reflected that "any projects that had the Yale name on it were [Uku] and [Knoll's] projections. This was the memorialization of that concept."). The trial court found Knoll's testimony to be credible, and that Knoll was entitled to 49% of the profits, as stated under the agreement. *See* Trial Court Opinion, 2/13/15, at 6; *see also id*. (interpreting the phrase "projects undertaken by us through Yale" in the agreement to be "Yale's projects [that] were, by definition, projects undertaken 'by us,' *i.e.*, the sole shareholders of Yale."). We will not disturb the trial court's factual findings, as they are supported in the record, and conclude that the Appellants' final claim is without merit.

In his brief, Knoll asks this Court to award counsel fees pursuant to Pa.R.A.P. 2744, claiming that the Appellants' arguments on appeal are frivolous. Brief for Appellee at 41-45.

Rule 2744 provides that:

> an appellate court may award as further costs[,] damages as may be just, including … a reasonable counsel fee … if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious. The appellate court may remand the case to the trial court to determine the amount of damages authorized by this rule.

Pa.R.A.P. 2744.

Essentially, Knoll argues that he is entitled to counsel fees because of the Appellants' conduct throughout the pendency of the case and the fact that their arguments on appeal solely consist of challenges to the trial

court's credibility determinations. While we agree with Knoll regarding the Appellants' arguments on appeal, we do not find that the Appellants' decision to appeal this case necessitates an award of counsel fees under Rule 2744. Moreover, the Appellants' conduct following the filing of the Complaint and at trial does not invite relief under Rule 2744. Thus, we decline to grant Knoll counsel fees.

Judgment affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/19/2016