J-A20032-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JFT CORPORATION, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| NEWTEL PAYPHONE OPERATIONS, INC. | : | |
| AND JOHN CORY, | : | |
| | : | |
| | : | |
| Appellees | : | No. 3087 EDA 2013 |

Appeal from the Judgment entered on October 4, 2013
in the Court of Common Pleas of Lehigh County,
Civil Division, No. 2010-C-2441

BEFORE:  FORD ELLIOTT, P.J.E., MUNDY and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED AUGUST 20, 2014**

JFT Corporation ("JFT") appeals from the Judgment entered against it and in favor of Newtel Payphone Operations, Inc., and John Cory ("Cory") (collectively referred to as "Defendants").  We affirm.

In 2009, JFT entered into an Agreement of Sales of Assets ("Agreement") to sell a business to Defendants for a total sale price of $305,800.  As part of the Agreement, Defendants agreed to pay a partial payment of $150,000, leaving a balance of $158,800.  Defendants failed to pay the balance.

In May 2010, JFT filed a Complaint against Defendants to recover the remaining $158,800.  In July 2010, Defendants filed Preliminary Objections, asserting that all claims must be submitted to arbitration.

On February 4, 2011, the trial court entered an Order requiring JFT to submit claims against Defendants to arbitration. As the parties were unable agree on an arbitrator, the Order also included the names of three potential arbitrators, and directed that each party was permitted to strike one of those individuals. By Orders entered in March and August 2011, the trial court referred the case to Joseph D'Amico ("Arbitrator") as arbitrator, and ordered that John Tornese ("Tornese"), JFT's sole proprietor, be added as an indispensable party.

The Arbitrator, after reviewing thousands of documents, depositions, and other evidence submitted by the parties, issued a decision in favor of Defendants on February 8, 2013, without holding a hearing. JFT filed a Motion to Vacate, which the trial court denied on May 20, 2013. On October 4, 2013, upon Praecipe by JFT, Judgment was entered against JFT. JFT filed a Notice of Appeal on October 10, 2013.[1] JFT filed a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement of Matters Complained of on Appeal.

On appeal, JFT raises the following questions for our review:

I. Whether [] the failure of the Clerk of [Courts] to serve [] Tornese with the Order of May 20[, 2013] makes the appeal timely filed?

II. Whether [] the trial court erred in its Order of February 4, 2011[,] by *sua sponte* creating a [hybrid] arbitration forum which was not agreed to by the parties?

---

[1] Tornese did not join the Motion to Vacate or the Notice of Appeal.

III. Whether [] this matter should [] have been submitted to arbitration?

IV. Whether [] the trial court's condonation of the [A]rbitrator's [decision] not to give [JFT] a hearing[,] but to allow the [A]rbitrator to decide the case on [Cory's] *pro se* [] voluminous e-mails[,] violated both the statutory procedure and due process requirements of our state and federal constitutions?

V. Whether [] the trial court condoned multiple [irregularities] within the arbitration process which suggested bias by the [A]rbitrator?

Brief for Appellant at 2 (issues renumbered for ease of disposition).

Our standard of review of common law arbitration is limited:

The award of an arbitrator in a nonjudicial arbitration which is not subject to statutory arbitration or to a similar statute regulating nonjudicial arbitration proceedings is binding and may not be vacated or modified unless it is clearly shown that the party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award. The arbitrators are the final judges of both law and fact, and an arbitration award is not subject to reversal for a mistake of either. A trial court order confirming a common law arbitration award will be reversed only for an abuse of discretion or an error of law.

***U.S. Claims, Inc. v. Dougherty***, 914 A.2d 874, 876 (Pa. Super. 2006) (citations omitted).

As an initial matter, we note that the trial court Opinion questions the timeliness of JFT's appeal. Specifically, the trial court states that JFT appeals from the Order of May 20, 2013, in which the trial court denied JFT's Motion to Vacate. Trial Court Opinion, 11/6/13, at 1. The trial court states that the appeal is untimely because JFT did not file a Notice of Appeal until October. ***Id.***

- 3 -

In its first claim, JFT argues that Tornese was not served with the Order of May 20, 2013, and that the Notice of Appeal was therefore timely filed within 30 days of Tornese's receipt of the adverse decision. Brief for Appellant at 7. However, the Order denying JFT's Motion to Vacate was not the final, appealable order in this case. *See Seay v. Prudential Prop. & Cas. Ins. Co.*, 543 A.2d 1166, 1168 (Pa. Super. 1988) (stating that under the Arbitration Act, arbitration awards must be reduced to judgment before they may be appealed). In this case, final judgment was entered on October 4, 2013. Thus, JFT's Notice of Appeal, filed on October 10, 2013, was timely. *See* Pa.R.A.P. 903(a).

We will address the second and third claims together, as they both regard the arbitration process. In its second claim, JFT contends that Defendants refused to implement the prescribed method of appointment of arbitrators due to the expense involved. Brief for Appellant at 8; *see also id.* at 12-13 (wherein JFT asserts in its third claim that the arbitration provision of the Agreement should not have been enforced because Defendants violated the terms of the provision by appointing an arbitrator through a method other than that prescribed by the Agreement). Further, JFT claims that it did not agree to the procedure ordered by the trial court, which ultimately required JFT to pay the Arbitrator for issuing a decision without conducting a hearing. *Id.* at 8.

The relevant arbitration provision of the Agreement states as follows:

> Any dispute or difference arising out of or in connection with this contract shall be determined by the appointment of a single arbitrator to be agreed between the parties, or failing agreement within fourteen days, after either party has given to the other a written request to concur in the appointment of an arbitrator, by an arbitrator to be appointed by the President or a Vice President of the Chartered Institute of Arbitrators.

Agreement of Sale of Assets, 10/16/09, at 8.

Here, the trial court sets forth the relevant law regarding common law arbitrations, as well as an analysis of the Agreement, and the choice of Arbitrator. *See* Trial Court Opinion, 2/4/11, at 2-4 n.1. The trial court determines that JFT's claims are without merit, and we adopt its sound reasoning for the purpose of this appeal. *See id.* As an addendum, we note that JFT specifically requested that the trial court name three potential arbitrators and allow each party to strike one. *Id.* at 5. Defendants did not object to this procedure. *Id.* Thus, because the parties agreed to Arbitrator, Defendants did not violate the terms of the Agreement.

In its fourth claim, JFT contends that the Arbitrator's decision not to hold a hearing violated statutory procedure and the due process requirements of both the Pennsylvania and United States constitutions. Brief for Appellant at 8. Specifically, JFT argues that Pennsylvania statutory law requires that parties to an arbitration have the opportunity to be heard, and that this right was violated when the Arbitrator made a decision without a hearing. *Id.* at 9-10. JFT also argues that the denial of a hearing, without

the parties waiving that right, violated due process under the Pennsylvania Constitution. *Id.* at 10-12.

The trial court addressed the fourth claim in its May 20, 2013 Order Denying Motion to Vacate as follows:

> The record evidence, including correspondence from [JFT's] counsel to the [A]rbitrator, demonstrates that all parties were in agreement as to the procedure for the presentation of evidence necessary for the [A]rbitrator to render a final decision on the merits. More specifically, through email communication dated January 15, 2013, the [A]rbitrator [] provided for a timetable for any supplementation of the record and, via email dated February 8, 2013, made it clear that a decision based on the extant record would be issued. [] The [trial] court, having had the opportunity [to] observe the parties directly at hearing in this matter, does not find credible the assertion that notwithstanding the foregoing agreed-upon procedure, further testimony was nonetheless contemplated. As such, [JFT] has not demonstrated that it was deprived of a hearing; rather, [a hearing] was waived through an agreed-upon procedure. Accordingly, [JFT] has failed to satisfy the high threshold necessary for overturning a common-law arbitration award. [*See*] 42 Pa.C.S.[A. §] 7341.

Order Denying Motion to Vacate, 5/20/13. We agree with and adopt the sound reasoning of the trial court on this matter. *See id.* Based on the record, JFT has not demonstrated that further testimony was necessary to render a decision in this case. Thus, its fourth claim is without merit.

In its fifth claim, JFT argues that the trial court allowed several irregularities during the arbitration process, which suggested bias by the

Arbitrator.[2]   Brief for Appellant at 13.   JFT claims that the Arbitrator incorrectly allowed Cory to represent his own company during arbitration. *Id.* at 13-14.   JFT also avers that the Arbitrator testified against Tornese, violating Rule 30 of the Judicial Arbitration and Mediation Services, Inc. ("JAMS"),[3] and showed bias in favor of Defendants.[4]   *Id.* at 14-15.

Here, JFT has failed to demonstrate that Cory acted as the Defendants' attorney during the arbitration proceedings.  Further, with regard to Rule 30, the record does not demonstrate that the parties agreed that the rules of JAMS would control in the arbitration, so Rule 30 is not applicable to this case.   Moreover, the Arbitrator's testimony as a witness in the defamation case does not establish bias in this case.   Thus, JFT's final claim is without merit.

Judgment affirmed.

---

[2] JFT raises several additional one-sentence claims without providing any pertinent analysis or citation.   *See* Pa.R.A.P. 2119(a) (requiring each argument to be supported by discussion and citation of pertinent authorities).   These claims are waived on appeal. *See **J.J. DeLuca Co. v. Toll Naval Assocs.**,* 56 A.3d 402, 411 (Pa. Super 2012) (stating that claims are waived where an appellant does not develop an argument or cite to any authority to support the claim).

[3] JAMS Rule 30 states that the Arbitrator may not be an expert in any case relating to the dispute that is the subject of arbitration.

[4] The Arbitrator was involved with an unrelated action between Cory and Tornese, concerning a defamation claim that arose out of an email Cory had sent to the Arbitrator during the arbitration proceedings at issue in this case. Brief for Appellees at 15.  The Arbitrator was a necessary witness, as he had received the original email.   *Id.*   The case proceeded to compulsory arbitration, where the panel awarded Tornese $1.00 in damages.  *Id.*

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/20/2014

IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
CIVIL DIVISION

JFT CORPORATION,              :

       Plaintiffs,          :          No. 2010-C-2441
                  :          (Hon. Edward D. Reibman)

     v.                       :

NEWTEL PAYPHONE OPERATIONS,   :
INC., and JOHN COREY,         :

       Defendants.          :

**ORDER**

AND NOW, this ___ day of January, 2011, upon consideration of Defendants'
Preliminary Objections to Plaintiff's Complaint, filed on July 21, 2010, and Plaintiff's
response thereto, filed on August 18, 2010, and after a hearing held on December 15,
2010, at which time Defendants moved for the appointment of an arbitrator, IT IS
ORDERED that Plaintiff is directed to submit its claims against Defendants to arbitration
in Lehigh County and that this matter is STAYED pending the outcome of the arbitration
proceeding.

IT IS FURTHER ORDERED that the following individuals are named as
potential arbitrators:

    1). Joseph S. D'Amico, Esq.

    2). Renee L. Ferretti, Esq.

    3). Kevin T. Fogarty, Esq.

Absent agreement by the parties, each party shall be permitted to strike one of the
three arbitrators. The remaining individual shall be appointed as the arbitrator in this
matter. Compensation of the selected arbitrator shall be as agreed upon by the parties and

NOW, 2/4/11
COPIES OF THE WITHIN COURT
ORDER OR DECREE MAILED TO
ALL INTERESTED PARTIES BY:

the arbitrator. Each party shall be responsible for fifty percent of the costs of the

arbitration.[1]

---

[1]     Procedurally, this matter has a somewhat convoluted history. Plaintiff, JFT Corporation (hereinafter, "Plaintiff"), initiated the above-captioned matter against Defendants Newtel Payphone Operations, Inc. and John Corey (hereinafter, "Defendants") by filing a complaint on May 13, 2010. Defendants' original counsel of record was Wally Zimolong, Esq., who filed the instant preliminary objections on July 21, 2010. Plaintiff filed an answer to the preliminary objections on August 18, 2010. However, before a ruling on the preliminary objections was issued, Attorney Zimolong filed a petition to withdraw as counsel, which was granted on October 8, 2010. Plaintiff subsequently filed a motion to strike the preliminary objections on October 14, 2010. Defendant's present counsel, Jason Rapa, Esq., entered his appearance on November 5, 2010. As such, Plaintiff's motion to strike was denied on November 15, 2010, and a hearing on the preliminary objections was held on December 15, 2010.

Defendants preliminarily object pursuant to Pa.R.C.P. No. 1028(a)(6), which provides that a preliminary objection may be filed on the basis of an agreement for alternative dispute resolution. Defendants' objection is based on an arbitration provision found in an "Agreement of Sale of Assets" (hereinafter, the "Agreement") entered into between the parties (attached as Exhibit A to Plaintiff's complaint). Paragraph 21 of the Agreement provides as follows:

> Any dispute or difference arising out of or in connection with this contract shall be determined by the appointment of a single arbitrator to be agreed between the parties, or failing agreement within fourteen days, after either party has given to the other party a written request to concur in the appointment of an arbitrator, by an arbitrator to be appointed by the President or Vice President of the Chartered Institute of Arbitrators.

"Whether an agreement to arbitrate disputes exists is a question of law." Neuhard v. Travelers Ins. Co., 831 A.2d 602, 604 (Pa.Super. 2003) (citing Emlenton Area Municipal Authority v. Miles, 548 A.2d 623, 625 (Pa.Super. 1988)). As stated by our Supreme Court, "Where the parties by contract contemplate the settlement of disputes by arbitration, every reasonable intendment will be made in favor of the agreement...The public policy of this State is to give effect to arbitration agreements." Capecci v. Joseph Capecci, Inc., 392 Pa. 32, 139 A.2d 563, 565 (1958) (citations omitted).

In this case, the language of paragraph 21 clearly reflects an intent to have any dispute arising out of the Agreement submitted to arbitration. However, the parties appear to agree that the appointment mechanism contained in paragraph 21 has failed. Per the language of the arbitration provision, if the parties are not able to agree upon an arbitrator (which they have not been able to do), then the president or vice president of the Chartered Institute of Arbitrators is to appoint an arbitrator. Plaintiff's counsel alleges that he did indeed contact the Chartered Institute of Arbitrators, but was informed that the Chartered Institute of Arbitrators does not appoint arbitrators. (Plaintiff's counsel further alleges that he was eventually referred to IDRS, a wholly owned subsidiary of the Chartered Institute of Arbitrators, where he was informed that an arbitration proceeding would cost $75,000.) Because the appointment method agreed to by the parties cannot be followed, Plaintiff contends the entire arbitration provision is unenforceable.

Chapter 73 of the Pennsylvania Judicial Code governs statutory, common law, and judicial arbitrations. Sections 7301-7320 of Subchapter A of Chapter 73, known as the Pennsylvania Uniform Arbitration Act ("UAA"), apply to statutory arbitration proceedings.



Whether an arbitration agreement is subject to the UAA depends on whether the arbitration agreement expressly provides for arbitration under the UAA. Sage v. Greenspan, 765 A.2d 1139, 1141 (Pa.Super. 2000). If the arbitration agreement does not include such an express statement, then the arbitration agreement is considered a common law arbitration agreement and is governed Subchapter B. Id. Here, the Agreement does not expressly provide for arbitration under the UAA; therefore, it is considered a common law arbitration provision and is governed by Subchapter B. However, section 7342(a) of subchapter B provides that certain provisions found in subchapter A apply to common law arbitration proceedings. 42 Pa.C.S.A. § 7342(a). One of these provisions is section 7305. See Nicholson Co. v. Pennsy Supply, Inc., 524 A.2d 520, 522 (Pa.Super. 1987) ("This provision [42 Pa.C.S.A. § 7305] is expressly applicable to common law arbitration agreements.").

At the hearing, the court alerted both parties to the aforementioned section 7305, which provides as follows:

> If the agreement to arbitrate prescribes a method of appointment of arbitrators, the prescribed method shall be followed. In the absence of a prescribed method *or if the prescribed method fails or for any reason cannot be followed*, or when an arbitrator appointed fails to act or is unable to act and his successor has not been appointed, the court on application of a party shall appoint one or more arbitrators. An arbitrator so appointed has all the powers of an arbitrator specifically named in the agreement.

42 Pa.C.S.A. § 7305 (emphasis added).

Defendant subsequently moved for the court to appoint an arbitrator. Plaintiff opposed the motion, reasserting his original argument that the entire arbitration agreement is unenforceable. Plaintiff bases his argument primarily on Volt Information Sciences, Inc. v. Board of Trustees, 489 U.S. 468, 109 S.Ct. 1248 (1989). However, this case is not directly on point, as the issue before the Court was whether a California statute was pre-empted by the Federal Arbitration Act where the parties agreed that their arbitration agreement would be governed by California law. Id. at 470. Although Plaintiff does not specify the language in Volt on which it relies upon, it would appear to rely on the following language contained in the majority opinion:

> Arbitration under the [Federal Arbitration Act] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, see *Mitsubishi, supra,* 473 U.S., at 628, 105 S.Ct., at 3353, so too may they specify by contract the rules under which that arbitration will be conducted. Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward. By permitting the courts to "rigorously enforce" such agreements according to their terms, see *Byrd, supra,* 470 U.S., at 221, 105 S.Ct., at 1242, we give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind by the FAA.

Id. at 479.

Clearly, a fair reading of this language does not support the result urged by Plaintiff; namely, that the appointment of an arbitrator pursuant to section 7305 is impermissible. Indeed,

3

the Federal Arbitration Act ("FAA") contains an analogous appointment provision, as section 5 of the FAA provides

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C.A. § 5.

Recently, in Stewart v. GGNSC-Canonsburg, L.P., 9 A.3d 215, 218-19 (Pa.Super. 2010), the Superior Court stated that

> Under 9 U.S.C.A. § 5, an arbitration agreement will not fail because of the unavailability of a chosen arbitrator unless the parties' choice of forum is an "integral part" of the agreement to arbitrate, rather than "an ancillary logistical concern." *Reddam v. KPMG L.L.P.*, 457 F.3d 1054, 1061 (9th Cir.2006); *Brown v. ITT Consumer Financial Corp.*, 211 F.3d 1217, 1222 (11th Cir.2000). Where the arbitration clause selects merely the rules of a specific arbitral forum, as opposed to the forum itself, and another arbitral forum could apply those rules, the unavailability of the implicitly intended arbitral forum will not require the court to condemn the arbitration clause. *Reddam*, 457 F.3d at 1059-61. At a minimum, for the selection of an arbitrator to be deemed "integral," the arbitration clause must include an "express statement" designating a specific arbitrator. *Id.* at 1060; *see Ramzy v. Tijerina*, 2010 WL 3377235, 2010 U.S.App. LEXIS 17872 (5th Cir.2010).

In Stewart, the arbitration provision at issue provided that disputes "shall be resolved exclusively by binding arbitration…in accordance with the National Arbitration Forum [the "NAF"] Code of Procedure…." Id. at 216 The NAF Code of Procedure was over 65 pages long, and provided that the Code of Procedure was only to be administered by the NAF or by any entity or individual providing administrative services by agreement with the NAF. Id. at 216-17. By the time the parties' dispute arose, the NAF was no longer accepting arbitration cases. Id. at 217. Adopting the trial court's reasoning that the forum provision was an essential part of the agreement, the Superior Court upheld the trial court's order denying the defendants' preliminary objections seeking to compel the enforcement of the arbitration provision. Id.

Unlike Stewart, the arbitration provision in this case does not require that any specific arbitrator be appointed, or that any particular set of rules be followed. As noted above, the arbitration provision only provides that if the parties cannot agree on an arbitrator then the president or vice president of the Chartered Institute of Arbitrators shall appoint the arbitrator. The arbitration provision does not require that the arbitrator be affiliated with the Chartered Institute of Arbitrators (or its subsidiary, IDRS), or that the arbitration proceeding proceed according to the rules of the Chartered Institute of Arbitrators or IDRS. Indeed, the appointment mechanism appears to be the definition of an "ancillary, logistical concern".

4

BY THE COURT:

_____

EDWARD D. REIBMAN, J.

---

As such, Defendants' preliminary objections shall be sustained and Plaintiff is directed to submit his claim against Defendants to arbitration. As for the appointment of an arbitrator, following the December 15 hearing, Plaintiff's counsel sent a letter to the undersigned's chambers requesting that, should the matter be stricken for arbitration, the court name three potential arbitrators and that each party get to strike one of the three. This appears to be a reasonable request, and, absent any objection form Defendants, three potential arbitrators have been named as noted in the Order above. If the parties are unable to agree on an arbitrator, each party shall be permitted to strike one of the three potential arbitrators. The remaining arbitrator shall be the arbitrator to preside over the arbitration proceeding.

5