J. A03034/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RAUSCH CREEK LAND, L.P., | : | IN THE SUPERIOR COURT OF |
| SUCCESSOR IN INTEREST TO KOCHER | : | PENNSYLVANIA |
| COAL COMPANY, | : | |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| PORTER ASSOCIATES, INC., | : | |
| | : | |
| Appellee | : | No. 1078 MDA 2014 |

Appeal from the Order Entered May 27, 2014
In the Court of Common Pleas of Schuylkill County
Civil Division No(s).: S-1721-2010

BEFORE: MUNDY, STABILE, and FITZGERALD,* JJ.

MEMORANDUM BY FITZGERALD, J.:            **FILED MAY 08, 2015**

Appellant, Rausch Creek Land, L.P., successor in interest to Kocher Coal Company, appeals from the order dismissing its complaint for injunctive relief against Appellee, Porter Associates, Inc.  Appellant contends the trial court erred by identifying an ambiguity in a lease, holding an agreement existed and that Mr. Steve Shrawder was an officer who could legally bind Appellant, concluding that the entire parcel of land at issue could be used for ash disposal, and ruling that Mr. Terry Schmidt's testimony was not relevant. We affirm.

---

* Former Justice specially assigned to the Superior Court.

We adopt the facts and procedural history set forth by the trial court. **See** Trial Ct. Op., 5/27/14, at 1-15.[1] After a bench trial, the court dismissed Appellant's complaint for injunctive relief on May 27, 2014. Order, 5/27/14.[2] Appellant timely appealed and timely filed a court-ordered Pa.R.A.P. 1925(b) statement.

Appellant raises the following issues:

> Whether the court erred as a matter of law by determining that an ambiguity existed in paragraph 7 of the lease regarding [Appellant's] exclusive reservation of the right to place only coal refuse in the Primrose Pit.
>
> Whether the court erred as a matter of law by determining that an agreement existed as to the Exhibit A map being the metes and bounds description.
>
> Whether the court erred as a matter of law by determining that Steve Shrawder was an officer with authority to legally bind [Appellant], specifically with regard to the effect of Mr. Shrawder's discussions and negotiation of the terms of the lease and placing his initials on the metes and bounds description.
>
> Whether the court erred as a matter of law in determining that the 800 acre parcel was properly permitted for ash disposal.

---

[1] We note the docket does not reflect whether the court complied with Pa.R.C.P. 236(b), which states the prothonotary "shall note in the docket the giving of the notice" required by Pa.R.C.P. 236(a).

[2] We construe this as an order resolving a request for injunctive relief, which is entitled to an interlocutory appeal as of right. **See** Pa.R.A.P. 311(a)(4). We acknowledge that an order dismissing a complaint after a bench trial is an atypical verdict.

> Whether the court erred as a matter of law in determining that Terry Schmidt's testimony was irrelevant regarding the fact that [Appellee] has no legal obligation to reclaim the Primrose Pit or any other abandoned strip mining pits within the 115 acre permit area or outside the 115 acre permit area.

Appellant's Brief at 7.

In support of Appellant's first issue, it argues that the trial court failed to explain how paragraph seven was ambiguous. Appellant refers this Court to the Surface Mining Permit ("SMP"), which purportedly states that the Primrose Pit was to be reclaimed using coal refuse only. Appellant maintains that the SMP, read in conjunction with the lease, precluded Appellee from depositing ash in the Primrose Pit. *Id.* at 18. We hold Appellant is due no relief.

The standard of review is an error of law:

> [I]n order to establish a claim for a permanent injunction, the party must establish his or her clear right to relief. However, unlike a claim for a preliminary injunction, the party need not establish either irreparable harm or immediate relief and a court may issue a final injunction if such relief is necessary to prevent a legal wrong for which there is no adequate redress at law. Additionally, when reviewing the grant or denial of a final or permanent injunction, an appellate court's review is limited to determining whether the trial court committed an error of law.

*Buffalo Twp. v. Jones*, 813 A.2d 659, 663-64 (quotation marks, citations, and footnote omitted).

Instantly, Appellant has presented no legal authority whatsoever in support of its argument. Appellant's Brief at 14-19. Appellant, for example,

does not explain how this Court may rely upon parol evidence to establish that paragraph seven is not ambiguous. "It is the appellant who has the burden of establishing his entitlement to relief by showing that the ruling of the trial court is erroneous under the evidence or the law. Where the appellant has failed to cite any authority in support of a contention, the claim is waived." ***Bunt v. Pension Mortg. Assocs., Inc.***, 666 A.2d 1091, 1095 (Pa. Super. 1995) (citations omitted); ***accord Korn v. Epstein***, 727 A.2d 1130, 1135 (Pa. Super. 1999). Because Appellant has cited no legal authority, it has waived this claim on appeal. ***See J.J. Deluca Co. v. Toll Naval Assocs.***, 56 A.3d 402, 412 (Pa. Super. 2012).

For its second issue, Appellant refers this Court to testimony and evidence supporting its contention that its "Exhibit A" is the true Exhibit A. Appellant emphasizes that the record contradicts Appellee's testimony that Appellee's "Exhibit A" is the actual Exhibit A. Appellant, however, "offers no [legal] authority at all to support it. Accordingly, this claim is waived. ***See*** Pa.R.A.P. 2119(a), (b)." ***J.J. Deluca Co.***, 56 A.3d at 412. Regardless, we would have discerned no basis to reverse as the trial court heard conflicting testimony and found Appellee's witness more credible with respect to identifying the actual "Exhibit A." ***See*** Trial Ct. Op. at 17-18 (finding most credible Mr. Shrawder's testimony that metes and bounds description was actual Exhibit A); ***Buffalo Twp.***, 813 A.2d at 663-64; ***see also In re Zeedick's Estate***, 218 A.2d 755, 755 (Pa. 1966) (*per curiam*) ("[O]n

- 4 -

appeal, it is not within our province to assess the credibility of the testimony."); ***Braun v. Wal-Mart Stores, Inc.***, 24 A.3d 875, 891 (Pa. Super. 2011) (*per curiam*) ("Questions of credibility and conflicts in the evidence are for the fact-finder to resolve and the reviewing court should not reweigh the evidence." (alteration and citation omitted)), *affirmed*, 106 A.3d 656 (Pa. 2014).

Appellant argues, in support of its third issue, that the court erred by holding that Mr. Shrawder was an officer with authority to legally bind Appellant. It references cross-examination testimony within which Mr. Schrawder allegedly admitted he was not an officer. In support of its argument, Appellant draws several factual conclusions from favorable testimony. Appellant, however, similar to its argument for its first and second issues, cited no legal authority whatsoever; accordingly, Appellant has waived this claim on appeal. ***See J.J. Deluca Co.***, 56 A.3d at 412. Moreover, Appellant failed to raise an appropriate objection before the trial court and thus failed to preserve the issue for appellate review. ***See generally*** Pa.R.A.P. 302.

For Appellant's fourth issue, we reproduce the entirety of its argument below:

> The SMP clearly provides that the permit area is 115 acres. The trial court had absolutely no basis to find that the SMP included any area greater than the 115 acres addressed in the SMP.

J. A03034/15

Appellant's Brief at 28-29.    Appellant's skeletal argument, devoid of authority and analysis results in waiver.[3]  ***See J.J. Deluca Co.***, 56 A.3d at 412.

In support of their last issue, Appellant similarly presents a one-paragraph argument lacking any legal analysis or citation to authority.  ***See*** Appellant's Brief at 29.   We accordingly find Appellant waived this issue.[4]

***See J.J. Deluca Co.***, 56 A.3d at 412.   For these reasons, we affirm the judgment below.

Judgment affirmed.

Judge Mundy joins the memorandum.

Judge Stabile concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/8/2015

---

[3] We note that the trial court construed the contract and not the SMP.  We add that Appellee acknowledged that it is subject to Pennsylvania Department of Environmental Protection regulations and other legal requirements governing ash disposal.  ***See*** Appellee's Brief at 35.

[4] Regardless, it is well-settled that questions of law are for the court to resolve.

- 6 -

COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY
TWENTY-FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL DIVISION

RAUSCH CREEK LAND, L.P.,         :     No. S-1721-2010
Successor in interest to           :
KOCHER COAL COMPANY,          :
                  Plaintiff   :
                        :
            v.           :
                        :
PORTER ASSOCIATES, INC.,        :
                  Defendant  :

Dirk Berger, Esquire and Charles B. Haws, Esquire– for the Plaintiff
Michael A. O'Pake, Esquire – for the Defendant

### ORDER OF COURT PURSUANT TO PA. R.A.P. NO.1925

MILLER, J.

AND NOW, this 30th day of July, 2014, it is hereby ORDERED that the

Prothonotary of Schuylkill County transmit the record papers of the within

proceeding along with the Order and Opinion filed May 27, 2014 to the Superior

Court of Pennsylvania.

BY THE COURT:

_____
MILLER, J.

2014 JUL 30 A 11: 52
PROTHONOTARY'S
OFFICE
SCHUYLKILL CTY PA
17901



1

# IN THE COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY
## TWENTY-FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
### CIVIL DIVISION

RAUSCH CREEK LAND, L.P.,    :  No. S-1721-2010
Successor in interest to      :
KOCHER COAL COMPANY,    :
        Plaintiff :
            :
            :
  v.          :
            :
PORTER ASSOCIATES, INC.,    :
       Defendant :

Dirk Berger, Esquire and Charles B. Haws, Esquire– for the Plaintiff
Michael A. O'Pake, Esquire – for the Defendant

## ORDER OF COURT

MILLER, J.

**AND NOW**, this *27* day of May, 2014, after trial, and in consideration of the Proposed Findings of Fact, Conclusions of Law and Memoranda of Law submitted by the parties, it is hereby **ORDERED**:

1. The Complaint filed by Plaintiff, Rausch Creek Land, L.P. successor in interest to Kocher Coal Company is **DISMISSED**;

2. The Court finds that the metes and bounds description set forth in Defendant's Exhibit 7 is the Exhibit "A" to the Lease Agreement entered into between Kocher Coal Company and Porter Associates, Inc. on January 29, 1991; and,

3. Defendant, Porter Associates, Inc. can dispose of ash anywhere within the confines of the above-referenced Exhibit "A", inclusive of the Holmes Pit and Primrose Pits

1



subject to any bonding requirements of Pennsylvania Department of Environmental Resources.

BY THE COURT:

MILLER, J.

2

## IN THE COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY
## TWENTY-FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## CIVIL DIVISION

RAUSCH CREEK LAND, L.P.,               :        No. S-1721-2010
Successor in interest to               :
KOCHER COAL COMPANY,                   :
                            Plaintiff  :
                                       :
            v.                         :
                                       :
PORTER ASSOCIATES, INC.,               :
                            Defendant  :

Dirk Berger, Esquire and Charles B. Haws, Esquire– for the Plaintiff
Michael A. O'Pake, Esquire – for the Defendant


### OPINION OF COURT

MILLER, J.

The matter before this Court is the Complaint for Preliminary/Permanent

Injunction filed on July 6, 2010 by Plaintiff, Rausch Creek Land, L.P. ("RCL"),

successor in interest to Kocher Coal Company ("Kocher") against Defendant,

Porter Associates, Inc. ("Porter"). On August 4, 2010, RCL's request for a

Preliminary Injunction to prohibit Porter from disposal of any ash on any portion

of the real property that is the subject of a Lease between Porter and Kocher

dated January 29, 1991, was denied. RCL's request for a Permanent Injunction is

now before the Court. A trial on the merits regarding the Complaint for

Injunction was held on April 1, 2014, and concluded on April 2, 2014.

The dispute between RCL and Porter in the instant matter is the area

upon which Porter is authorized to dispose of ash pursuant to Exhibit "A" of the

1

Lease Agreement ("Lease"). RCL sets forth that it is a specific and limited area shown on a map marked Plaintiff's Exhibit 3 as the "designated ash disposal area". On the contrary, Porter maintains that it is <u>any</u> area, on the entire 800 acre parcel where ash could be discarded. The 800 acre property was previously owned by Kocher and is now owned by RCL and is described in metes and bounds in Defendant's Exhibit No. 7.

Robert Rivkin ("Rivkin"), general partner of RCL testified concerning the merits of the case. His understanding was that Kocher entered into a Consent Order and Agreement ("COA") with the Department of Environmental Resources ("DER") on January 19, 1990.; the COA required Kocher to a) reclaim the Porter Stripping site, which had been mined by Kocher pursuant to an old Mine Drainage Permit and b) obtain a new Surface Mining Permit ("SMP") for the Porter Stripping site. Kocher obtained a new Surface Mining Permit for the Porter Stripping site on June 25, 1990 and entered into a Lease with Porter on January 29, 1991; also, Kocher agreed to transfer the SMP to Porter and Porter agreed to accept the transfer of that permit and comply with the terms of the SMP and all applicable laws; Robert Rissinger (Rissinger) was the President of Kocher at the time the Lease was executed; Rissinger sold his interest in Kocher to the Lickman family in 1994; RCL acquired the assets of Kocher out of bankruptcy in 2003.

Rivkin testified that paragraph 7 of the Lease addresses the issue of coal refuse disposal. Paragraph 7 states:

2

> Lessor shall retain right to deposit coal re[f]use in the
> Holmes stripping and abandoned Primrose stripping as is
> described in the SMP #54890105.

Rivkin claims that the language in paragraph 7 of the Lease is unambiguous; that

the SMP outlines the phases of the operation, specifically the Module 10

Operations Plan, Exhibit P.13 and as revised Exhibit P.14. Rivkin asserts that

these Exhibits establish that the Primrose Pit was to be reclaimed using coal

refuse as opposed to ash. This is set forth under the heading Phase 5 which

states:

> This area consists of an abandoned pit that was believed to have
> been mined in the early 1950's. After coal refuse areas within the
> eastern Holmes pit and any required to fill Phase 2 are completed,
> this pit will be filled with coal refuse in accordance with Module 11.

Rivkin then discussed Module 11, Exhibit P.15, noting the provision under the

heading Abandoned Primrose Pit as follows:

> Coal refuse will be deposited in the abandoned Primrose Stripping
> as noted on Exhibit P.11.1 and P.11.3. The floor of this abandoned
> pit will be filled with at least ten feet of overburdened spoil before
> the coal refuse is dumped, layered and compacted using end dump
> trucks and a bulldozer or front end loader. Upon completion of the
> fill, spoil material suitable of supporting vegetation shall be spread
> over the surface and then seeded accordingly.

Rivkin references three Exhibits marked P.11.1, P.11.2 and P.11.3 noting that

P.11.1 and P.11.3 are mentioned in the provision for the Primrose Pit and Exhibit

P.11.3 shows the Primrose Pit whereby the bottom is shown filled with clean fill

and the remainder shown filled with coal refuse. Rivkin thus maintains that

there is no reference to any ash going into the pit.

3

Rivkin testified that Module 10 Plaintiff's Exhibit 13 was revised on 4/30/90 and makes no reference to coal ash being deposited anywhere; also Module 10 revised on 9/19/90, as shown in Plaintiff's Exhibit 14 contains references to ash disposal but only in certain areas not including the Primrose Pit; and Phase 2 references ash disposal to be used to help fill the Porter Pit but there was no amendment to include ash in Phase 5 regarding the Abandoned Primrose Pit.

Rivkin further testified that paragraph 7 of the Lease specifically reserved for Kocher the Primrose Pit for refuse disposal as described in the SMP and that Porter's assertion that it could seek to amend the SMP to place ash elsewhere is incorrect. Rivkin further testified that the Lease specifically provides that Porter was to accept a transfer of the SMP, and in accepting a transfer of the permit, is bound by the terms of the SMP and that the clear terms of the SMP provided that coal refuse was to be used to reclaim the Primrose Pit.

Rivkin also testified that Plaintiff's Exhibit 3 prepared by Ted Puschak, engineer for Kocher Coal based on Module 9 operations map which was part of the SMP, is the proper Exhibit "A "to the Lease. Rivkin claims that in reviewing Kocher's files located in the basement of the Kocher Coal Company office, he found a file folder titled Porter Associates – Flyash Lease Original with map. In this file was a Lease with ink signatures and corporate seals and the Exhibit "A" map admitted into evidence as Plaintiff's Exhibit 3. Rivkin maintains that Plaintiff's Exhibit 3 is Exhibit "A" to the Lease referenced on Plaintiff's Exhibit 2

4

in the first "Whereas" section. The end of the paragraph notes that "Lessee shall have the exclusive rights to deposit ash and mine anthracite coal by surface mining methods within designated areas of the demised premises such designated areas being subject to approval of the Pa Department Of Environmental Resources." Rivkin then offers that because the Exhibit "A" map designates areas of the demised premises for ash disposal, specifically labelled Designated Ash Disposal Area which area was addressed in the permit amendment that was pending at the time the Lease was executed, as presented in the revised Module 10 and Module 25, the referenced permit amendment set out the areas sought to receive approval from the Department for ash disposal.

He further asserts that the language in this paragraph does not mean that Porter may designate any area it elects for ash disposal. He claims this paragraph deals with the fact that the approval of the amendment to the SMP to allow the disposal of ash was pending at the time the Lease was signed. Thus, the amendment to the SMP authorized the disposal of ash in certain areas, more specifically, the Porter Pit but not the Primrose Pit. Rivkin testified that the area shown on Exhibit "A" does not include the Primrose Pit and that specifically labeled on Exhibit "A" is the OLD ABANDONED PRIMROSE PIT FUTURE REFUSE DISPOSAL AREA.

Rivkin further notes that page 2 of the Lease describes the Fine Coal and/or Silt Storage Area on Exhibit "A" which by definition would have to be a map not a metes and bounds description and that the Exhibit "A" was clearly

5

identified as a map in this Lease. Rivkin also notes Exhibit "A" identified the Primrose Pit and depicts that pit as being reserved for refuse disposal. On cross-examination, Rivkin stated that the Lease Agreement was found in the Kocher Coal Company office after he acquired the company but that he was not involved with the company when the Lease was negotiated. He also admitted that during the course of several law suits brought by RCL, many people had access to the files and things were periodically added or removed from those files.

Porter disputes Rivkin's contention that Plaintiff's Exhibit 3, that is the map, is the correct Exhibit "A" attachment to the Lease and to the contrary, contends that Exhibit "A" is the metes and bounds description set forth in D-7. On cross-examination, Rivkin's claims were challenged as speculative and faulty for several reasons. First, there are no signatures on the map; secondly, that Engineer Ted Puschak, former employee of Kocher Coal, testified the map believed by Rivkin to be Exhibit "A" to the Lease was a permit map and was nothing more than a working draft; third, the parties that negotiated the Lease, Schrawder and Padinske, maintain that the intent of the Lease was to allow ash to be disposed of anywhere there was a hole, void or crop fall on the 800 acres, including the Holmes and Primrose Pits.

The second witness for RCL was engineer Terry Schmidt. Schmidt noted that he was not involved in the negotiations of the Lease between Kocher and Porter in 1990 and 1991 but that he reviewed the permit files in 2003. He also noted that the Lease transferred the permit issued by Pa. Department of

6

Environmental Protection ("DEP") from Kocher to Porter. When Schmidt was questioned about the Consent of Landowner form he noted that it granted the mine operator and DEP access but unequivocally stated that the Lease or Deed between the landowner and mine operator controlled the agreement and intent of the parties and does not convey any property rights.

Schmidt identified Module 10 and noted that the document dated April 30, 1990 did not authorize ash placement and that phase 5 was the area known as the Primrose Pit and was an area delineated for coal refuse. He also identified Module 11, a Coal Refuse Disposal form which under paragraph 11.2 showed areas for coal refuse; which is a later Module 10. He also noted that the Operational Information Form included flyash/bottom ash disposal, but phase 5 just referenced coal refuse; that Module 11 Coal Refuse Disposal Form dated May 9, 1990 in paragraph 11.2 identified three areas for coal refuse disposal and that the attached exhibits identified that breaker rock is to be disposed of in the Primrose Pit, the Holmes Pit and the Porter stripping. Finally, he noted there are no current reclamation requirements for the Primrose Pit and RCL has no obligation to fill it. Porter argues and we agree that the testimony of Schmidt is wholly irrelevant to the issue presented. Schmidt testified as to various phases of the mining operation documents as it states to DEP permits, Consent of Landowner forms and mining and reclamation activity but he had no direct involvement in the preparation or signing of the Lease.

7

Porter, inter alia, presented witness, Steve Shrawder, who was employed by Kocher Coal Company from 1975 to 2000, and was the assistant to the President during the majority of that time; Shrawder was familiar with DEP and MSHA and is the son-in-law of former President and owner of Kocher Coal from 1975-1994. He left when the business operations were purchased by Ronald Lickman.

Shrawder testified that Kocher operated a mining operation, including deep mining, surface mining and coal preparation. He testified that on or about January 19, 1990, Kocher entered into a COA with DEP with regard to its 800 acre parcel of property in Porter Township, Schuylkill County, Pennsylvania; Shrawder testified that a COA is an agreement between an operator and DEP that is used when the operator has not fulfilled its obligations to DEP. Shrawder testified that the COA between Kocher and DEP was for Kocher to begin reclaiming the permitted stripping pits on Kocher's property; Shrawder testified that in order to fulfill Kocher's obligations under the COA, he began negotiations with Padinske in order for Padinske to dispose of ash in the abandoned stripping pits. Shrawder testified that he was primarily responsible for the negotiations of the Lease that was eventually entered into by Kocher and Porter dated January 29, 1991. Shrawder testified that it was he and Padinske that negotiated the terms of the Lease but that it really was more of a designing of the Lease than a negotiation.

8

Shrawder further testified that the discussions he had with Padinske were held because Kocher needed Porter's ash to fulfill its obligations under the COA; Shrawder testified that the Lease was designed by he and Padinske for Porter to place ash anywhere on the 800 acre site it wanted to, including the Holmes and Primrose Pits. In fact, Shrawder testified that it was essential to fill all of the abandoned stripping pits with ash as a means to bring water to the surface area and prevent it from going into the Porter Tunnel or other tunnels underneath the site. Filling of all of the pits would prevent acid mine discharge and make it easier to direct the flow of water on the surface. He noted that filling of the old abandoned stripping pits would also prevent accidents such as those which had occurred on site by all-terrain vehicles; Shrawder was shown Plaintiff's Exhibit 3, which is the map RCL contends is the Exhibit "A" to the Lease. Shrawder denied that the map was the true Exhibit "A" to the Lease. He was specifically asked if the "designated ash disposal area" on that map was the only area for which Porter was permitted to dispose of ash pursuant to the Lease. Again, Shrawder denied that there was a limited area on which Porter could dispose of the ash.

Shrawder testified that the entire 800 acre parcel of land was available for Porter to dispose of ash; Shrawder testified that Porter was expected to start its ash disposal in the "designated ash disposal area" indicated on Exhibit "A" due to the fact that that was the only area permitted and bonded at the inception of the Lease. Shrawder explained that it was standard in the mining industry and in the reclaiming of abandoned stripping pits that an operator mines or reclaims

9

in a certain area and when the mining is completed or the area reclaimed, the bond for that area is released or shifted to another area which is then mined and or reclaimed. The entire 800 acre parcel of property was properly permitted, however, the area identified as the "designated ash disposal area" was the only area bonded at the inception of the Lease. Later, other areas within the permitted area were bonded by Porter and ash disposal occurred in those areas, specifically the Holmes Pit to which Shrawder testified was reclaimed with flyash and coal refuse;

Shrawder further testified as to his familiarity with paragraph 7 of the Lease Agreement which RCL contends is an exclusive rights reservation for coal refuse to the exclusion of ash placement by Porter. Shrawder testified that Kocher needed somewhere to put its breaker rock from present production of its breaker due to new DEP requirements requiring that presently produced breaker rock needed to be removed from the surface and placed in old abandoned stripping pits; the Holmes Pit and Primrose Pit were singled out by he and Padinske as an accommodation made by Porter for Kocher; Shrawder noted that the Primrose Pit and Holmes Pit were closer to the Kocher breaker and it simply made good business sense to place the breaker rock in either of those pits. In addition, the Holmes and Primrose Pits were going to be bonded by Porter, obviating the need for Kocher to post any bonds for those pits.

Shrawder testified that Kocher was experiencing severe financial difficulties and it did not have the means to post the appropriate bonds.

10

Additionally, Kocher did not have the manpower necessary to truck the breaker rock from the breaker to the Lincoln Pit or any other area other than the Holmes or Primrose Pits; Shrawder was clear that the Markson Material that Rivkin claims in his testimony that RCL wished to dispose of in the Primrose Pit, was not what was contemplated by the parties in 1991 when the Lease was entered into. In fact, he testified that the Markson Material did not even belong to Kocher at that time so there would be no way that it could be contemplated to be disposed of in the Primrose Pit; Shrawder also testified that the reservation for breaker rock in the Holmes and Primrose Pits was not exclusive to the rights of Porter and was not only a reservation for Kocher, but that other companies were permitted to dispose of breaker rock in either of those pits as well; Shrawder testified that the intent of the parties at the time the Lease was entered into was that both ash and breaker rock would be placed in the Holmes and Primrose Pits.

Shrawder was shown a copy of the metes and bounds description marked as Defendant's Exhibit 7 which Porter contends is the Exhibit "A" to the Lease Agreement. Shrawder testified that the metes and bounds description is the Exhibit "A" which was attached to the Lease; Shrawder testified that the metes and bounds description encompasses the entire area owned by Kocher, except for a 100 foot boundary within the southern boundary line of Kocher's property; on cross examination, Shrawder was shown Module 10 and questioned regarding phase 5 which indicates that it will be filled with coal refuse. Shrawder testified that although he was not sure what the permit and the

11

modules had indicated, he was certain that the intent of the Lease Agreement between Kocher and Porter was for Porter to place ash anywhere on the 800 acre parcel of property owned by Kocher and not limited to the designated area as contended by RCL.

The second witness called by Porter was Michael Menghini, employed by DEP as a District Mine Manager since September, 2010, Assistant Bureau Director for District mining Operations since June, 2013 and a Mine Inspector Supervisor since 1990. Menghini testified he was employed by DEP at the time the COA was entered into between Kocher and DEP, he was knowledgeable about the need for Kocher to reclaim the old abandoned stripping pits on its property at the time COA was entered into and that he was involved in bringing Kocher and Porter together so that Porter could dispose of ash at the Kocher site in order for Kocher to fulfil its obligations under the COA.

Menghini testified that the clear intent of DEP, Kocher and Porter was for Porter to place ash anywhere on Kocher's site so as to fulfill the reclamation obligations. Menghini testified that the intent was for Porter to begin ash disposal in what was referred to as the Porter Stripping and that once that reclamation obligation was competed, Porter would move to other areas on Kocher's property, including the Holmes and Primrose Pits, for the disposal of ash. Menghini testified that he and DEP were well aware that the Holmes and Primrose Pits were to be filled with ash and that the Holmes Pit was in fact filled with ash with the knowledge and consent of DEP. Menghini also testified that

12

mining reclamation plans are continually updated, that RCL has made numerous changes to its mining plans over the years and Porter has that same right.

The last witness called by Porter was Edward Padinske a shareholder of Porter. The other shareholder of Porter being Joseph Frank, Sr. Padinske testified that Porter was formed for the specific purpose of disposing of ash on the Kocher site. Padinske testified that he was well aware of the COA entered into between Kocher and DEP, that he was approached by DEP and Kocher to fulfill the reclamation obligations of Kocher pursuant to that COA and that his intent was to do so with ash. Padinske testified that he was the individual on behalf of Porter that designed the Lease with Shrawder from Kocher.

Padinske testified that the specific negotiations he had with Shrawder from Kocher was that the entire 800 acre parcel of property owned by Kocher would be available for Porter to dispose of ash. Padinske testified that due to the entire 800 acre parcel of property being available to Porter for ash disposal, a long term Lease was required. Padinske testified that initially a thirty (30) year Lease was contemplated but it was subsequently reduced to a twenty-seven (27) year Lease. Padinske also confirmed that Kocher's attorney, Allen Schaeffer, drafted the Lease after Padinske and Shrawder discussed its terms.

Padinske further testified that the entire area of the property owned by Kocher needed to be available for Porter's ash disposal due to the fact that ash disposal as a beneficial use for reclamation was a relatively new concept at that time and that there was a possibility that the ash from different sources would

need to be segregated for potential liability purposes. Padinske testified that it was ultimately determined that the ash need not be segregated by source, nevertheless, at the time the Lease was entered into between Kocher and Porter, numerous places to dump ash on the site may have been needed.

Padinske testified that shortly after the Lease was fully executed, the Exhibit "A" metes and bounds description was prepared by Puschak, and Exhibit "A" was copied and maintained in Porter's files. Said document was marked as Defendant's Exhibit 4 and included the handwritten metes and bounds description as prepared by Puschak.

Next, Padinske testified that in Defendant's Exhibit 5, Puschak inserted the words "more or less" on the document and as set forth in Defendant's Exhibit 5. Padinske testified that instead of retyping that entire document, because computers were not used at that time, he maintained a copy of that document but did not use it for any other purpose. Padinski then testified that he took the Exhibit "A", without the words "more or less", to Kocher's offices and had Shrawder place his initials on the Exhibit "A" so as to confirm that any area of the 800 acres of Kocher's property could be used for ash disposal by Porter. Padinske copied the Exhibit "A" with just Shrawder's initials on it and maintained a copy in Porter's files. That copy was marked as Defendant's Exhibit 6. Padinske further testified that he took that document with only Shrawder's initials on it, to the office of Joseph Frank, Sr. and obtained Frank's initials on Exhibit "A". The document with Shrawder's and Frank's initials on it was

14

marked as Defendant's Exhibit 7 and that is the document that was attached to the Lease as Exhibit "A".

## DISCUSSION

RCL asserts that Porter does not have the right to dispose of ash in the Primrose Pit as set forth in paragraph 7, of the Lease which reserves to Kocher the right to dispose of coal refuse in the Homes and Primrose Pits. RCL further alleges that Porter is only able to dispose of ash in the "disposal area" designated on RCL's Exhibit 3. The Lease between Porter and Kocher, now RCL, was entered into on January 29, 1991. RCL acquired the company in 2003 and was bound by the terms of the Lease.

If a person grants a portion of his property to another and the grant is susceptible of more than one interpretation, the words of the grant are to be construed most strongly against the grantor and more favorably to the grantee. Cites Service Oil Co. v. Haller, 393 Pa. 26, 142 A.2d 13, unless, of course, the grantee drafted the grant and was therefore responsible for the ambiguity. Similarly, if a grant reserves something to the grantor, the reservation is construed more favorably to the grantee. Klaer v. Ridgway, 86 Pa. 529 (1878).

The Lease is a contract which must be interpreted according to contract principals. Pugh v. Holmes, 486 Pa. 272, 405 A.2d 897 (1979). The intention of the parties is a primary consideration in the interpretation of any contract. First, the document itself is to be reviewed when the terms are clear and unambiguous. Secondly, oral evidence must be considered to explain or clarify or resolve the

15

ambiguity irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances. See In re Herr Estate, 400 Pa. 90, 161 A.2d 32 (1960).

General Manager of RCL, Robert Rivkin, contends that Exhibit "A" to the Lease is the map offered into evidence as Plaintiff's Exhibit 3 and was in the file in the office of Kocher Coal Company when he became the general partner and RCL became successor to Kocher Coal Company after a bankruptcy sale. Rivkin claims the map was the only other thing in the file with the Lease, however, further testimony in the matter revealed that there were other things placed in the file and/or removed periodically from the file. This makes Rivkin's assertion that the map was the only other thing in the file questionable.

In Lampenfeld v. Seitz,450 Pa. Super. 527, 676 A.2d 684 (1996), the trial court, inter alia, properly looked to parol evidence to determine parties' intent regarding a lease assignment, particularly testimony of the former leaseholder's attorney, who was the scrivener of an inaccurate metes and bounds description. Like any other contract, an assignment of a Lease may be interpreted by reference to parol evidence if the assignment is ambiguous. In re Estate of Hall, 517 Pa. 115, 535 A.2d 47 (1987). In this case, supra, the lease assignment first specified that it intended to assign the lease of the property which was originally leased by D.M. Stelitano. The exhibit attached to the assignment, however, included a metes and bounds description which did not cover the property leased to Stelitano and in fact does not form a complete parcel of land. Robert

16

Lampl was the attorney for Il Geraio when it obtained the lease and also was the scrivener of the inaccurate mortgage documents. The Court found that his testimony was highly relevant to explain the ambiguity therein.

Similarly here, the Court must look to parol evidence to determine the parties' intent with respect to the exhibit. Upon review, we find the most credible and persuasive testimony was that of defense witness, Steve Shrawder.

Shrawder testified that he was employed by Kocher Coal Company from 1975 to 2000 and was assistant to the President during most of that 25-year period. He explained that Kocher conducted a mining operation that included deep mining, surface mining and coal preparation; he was familiar with the COA and Agreement with DEP concerning the 800-acre parcel in Porter Township, Schuylkill County, Pennsylvania, and that under the COA Kocher was to begin reclaiming the permitted stripping pits on Kocher's property.

During this time Shrawder began negotiations with Padinske of Porter to dispose of ash in the abandoned pits because Kocher did not have the resources to reclaim the pits. He testified that the terms of the Lease dated January 29, 1991, were such because Kocher needed Porter's ash to fulfill its obligations under the COA. Shrawder described the details of the filling of the old abandoned pits and denied that the "designated ash disposal area" on the map labeled Exhibit "A" was the only area on which Porter was permitted to dump ash pursuant to the Lease. On the contrary, he maintained that the entire 800-acre parcel of land was available for Porter to dispose of ash and that the Exhibit

17

"A" to the Lease is the metes and bounds description marked as Defendant's Trial Exhibit 7.

First, we conclude that an ambiguity clearly exists. The area where ash can be disposed of must be ascertained from evidence other than the document itself since the parties disagree as to the true Exhibit "A" that was referred to in the Lease. Where an ambiguity exists, the oral evidence presented must be weighed in order to explain, clarify or resolve the ambiguity. In re Herr Estate, supra. The parties disagree as to the Exhibit that describes the ash disposal area referred to in the Lease. Accordingly, the facts and circumstances surrounding the negotiation and drafting of the Lease as explained by Shrawder are the most significant and compelling.

Rivkin's argument as to Exhibit "A" fails for three reasons: 1) Rivkin found the map with the Lease in the file, however, testimony revealed other documentation was periodically added or removed from the file; 2) others had access to the file; and, 3) Rivkin took over the Company years after the Lease was negotiated and signed and the parol evidence offered by him is not credible.

We find the evidence submitted by Porter in support of its position is more persuasive and credible. Shrawder testified on behalf of Porter; he is not a party to this litigation and has no interest, bias or stake in any outcome of the litigation. He stated throughout his testimony that the intent of the parties was for Kocher to use Porter to fulfill Kocher's obligations under the COA and that Porter had the right to place ash anywhere on the 800-acre parcel of property

18

owned by Kocher. This specifically included the Holmes and Primrose Pits. Shrawder testified that coal refuse from the present production of Kocher's breaker would be placed in the Primrose Pit as well. Shrawder testified that paragraph 7 of the Lease reserving to Kocher the right to dispose of coal refuse in the Holmes and Primrose Pits was inserted merely as an accommodation made by Porter to Kocher.

RCL maintains that Porter does not have the right to dispose of ash in the Primrose Pit based on the language of paragraph 7 which reserves to Kocher the right to dispose of coal refuse in the Holmes and Primrose Pits. Furthermore, RCL maintains that the Lease only authorizes Porter to dispose of ash in the "designated ash disposal area' designated on RCL's Exhibit "A".

Padinske, on behalf of Porter, testified that he negotiated the Lease directly with Shrawder, and Padinske confirmed that the discussions always centered around using the entire 800-acre parcel of property for ash disposal. The map which RCL contends is Exhibit "A" was never used by Shrawder or Padinske to prepare that Lease. In essence, RCL's contention that this map constitutes Exhibit "A" is doubtful.

RCL introduced testimony of the modules submitted by Kocher with its permit for the site and has alleged that those modules confirm that ash was not contemplated to be disposed of in the Primrose Pit. Menghini, however, testified that the modules and mining plans are always subject to change. In fact,

19

Menghini clearly and credibly testified that Module 25 did in fact allow for the placement of flyash/bottom ash in the Primrose Pit.

## CONCLUSION

In summary, the evidence presented by RCL is not compelling and was refuted by the evidence presented by Porter. The parole evidence primarily of Steve Shrawder, resolves the ambiguity by proving that the intent of the Lease between Kocher and Porter was to place ash anywhere on the 800-acre site of Kocher. The individuals involved with the negotiation and preparation of the Lease credibly testified as to the intent of the parties in 1990 and 1991 when the Lease was drafted and executed. Additionally, the Lease was drafted by Kocher's attorney, Allen Schaeffer, whereby any ambiguity in the Lease weighs heavily against the drafter of the document.

Accordingly, we enter the foregoing Order.

BY THE COURT:

_____

MILLER, J.

20