J-S15032-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| NANCY CAMPBELL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THE ESTATE OF SEVERIN | : | No. 1547 MDA 2022 |
| FAYERMAN, DECEASED BY AND | : | |
| THROUGH TONI HUNTER FAYERMAN, | : | |
| EXECUTRIX, TONI HUNTER | : | |
| FAYERMAN, INDIVIDUALLY, GEORGE | : | |
| NEIRA, KATE NEIRA, KARI NEIRA, | : | |
| KELLI GOUKER AND TERRI GRUVER | : | |

Appeal from the Order Entered October 4, 2022
In the Court of Common Pleas of Berks County
Civil Division at No(s):  17-20108

BEFORE:  BOWES, J., STABILE, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                **FILED: SEPTEMBER 13, 2023**

Nancy Campbell ("Campbell") appeals from the order granting the motion for summary judgment filed by the Estate of Severin Fayerman ("the Estate"), deceased, by and through Toni Hunter Fayerman ("Hunter Fayerman"), individually and executrix of the Estate.[1]  We affirm.

Campbell and Decedent were married in 2004.  Prior to the marriage, Campbell acquired real estate in Berks County which was secured by a mortgage in her name.  In 2008, Campbell and Decedent signed a post-nuptial agreement ("Agreement") which provided, in relevant part:

_____

[1] The remaining parties identified in the caption are not involved in this appeal.

> [Decedent] acknowledges that [Campbell's] mortgage payment with respect to the aforesaid real estate totals $5,591.80 per month, including principal and interest, and the note is due and payable on December 1, 2011. [Decedent] agrees that, in the event [Campbell] shall, from time to time, make additional principal payments on said mortgage, he will match said principal payments (upon receipt of satisfactory proof from [Campbell] . . .. [Decedent] further agrees that, in the event [Campbell] chooses not to make additional principal payments on the mortgage, he will pay down twenty-five percent (25%) of the then outstanding principal balance on December 1, 2011. [Decedent] further agrees that, in the event the said mortgage is still outstanding at the time of his death, the then[-]principal balance shall be paid by [Decedent's] estate, and that [Decedent's] Will shall so provide.

Agreement, 9/22/08, at ¶ 35.

Following the execution of the Agreement, Campbell and Decedent divorced, and Decedent married Hunter Fayerman. Campbell did not make any additional principal payments on the mortgage; accordingly, per the terms of the Agreement, Decedent was required to pay down twenty-five percent of the outstanding principal balance on the due date (*i.e.*, December 1, 2011). Decedent did not make the payment by December 1, 2011; however, he made the requisite 25% payment ($159,351.44) several weeks later, on January 24, 2012.

In February 2012, Campbell refinanced the mortgage on the subject real estate. In so doing, she satisfied the mortgage that had been referenced in the Agreement, and the satisfaction of that mortgage was recorded in the Office for the Recorder of Deeds.

In 2015, Decedent died, leaving the entirety of his estate to Hunter Fayerman, whom he named as the Executrix of the Estate.

In 2017, Campbell again refinanced the mortgage on the real estate. She thereafter initiated the present lawsuit against, *inter alia*, the Estate and Hunter Fayerman, individually and in her capacity as Executrix.[2] In her complaint, Campbell averred that, pursuant to the Agreement, the Estate was required to satisfy the balance of the refinanced mortgage on the real estate ($478,434.09). In 2021, the Estate and Hunter Fayerman filed a motion for summary judgment seeking dismissal of the complaint on the basis that the Estate had no obligation to pay Campbell any further mortgage amounts under the Agreement. On October 4, 2022, the trial court granted the motion for summary judgment and dismissed the complaint with prejudice. Campbell filed a timely notice of appeal, and both she and the trial court complied with Pa.R.A.P. 1925.

Campbell raises the following issues for our review:

I.   Did the trial court correctly interpret the terms of the [Agreement] when it concluded that [Decedent's] obligation to [Campbell] ended in January 2012 when he made a payment of 25% principal toward [Campbell's] loan, and thus [Campbell] had no cause of action against appellees?

II.  Does the Agreement's language reflect the parties' understanding and intent that the loan would be refinanced after [Decedent] made the 25% principal payment in January 2012, and that [the E]state would satisfy the balance due on the refinanced loan when he died?

---

[2] Campbell claimed that the remaining defendants received monetary gifts or benefited from payments made on their behalf by Decedent shortly before he died in order to render the Estate insolvent, and therefore unable to satisfy Decedent's purported obligation to pay off Campbell's refinanced mortgage. *See* Complaint, 11/16/17, at ¶¶ 39-52.

III. Does the parties' course of conduct after signing the Agreement as well as Campbell's pleadings[,] other evidence[,] including but not limited to the Estate's admission that [Campbell] was its creditor under the Agreement, show the parties' intent that [the E]state would be liable for Campbell's refinanced debt when he died?

IV. Did the trial court err in granting summary judgement [*sic*] against [Campbell]?

Campbell's Brief at 4 (unnecessary capitalization omitted).

Our standard of review of an order granting or denying summary judgment is well-settled:

> We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

***Daley v. A.W. Chesterton, Inc.***, 37 A.3d 1175, 1179 (Pa. 2012).

In her first two issues, Campbell argues that the trial court misinterpreted the language of the Agreement. In addressing this issue, we observe that "[t]he determination of marital property rights through prenuptial, post[-]nuptial and settlement agreements has long been permitted, and even encouraged. Both prenuptial and post-nuptial agreements are contracts and are governed by contract law." ***Holz v. Holz***, 850 A.2d 751, 757 (Pa. Super. 2004) (internal citations omitted). In

- 4 -

determining whether the trial court properly applied contract principles, the reviewing Court must decide, based on all the evidence, whether the trial court committed an abuse of discretion or error of law. *See Lewis v. Lewis*, 234 A3d 706, 711 (Pa. Super. 2020). An abuse of discretion:

> is synonymous with a failure to exercise a sound, reasonable, and legal discretion. It is a strict legal term indicating that an appellate court is of the opinion that there was commission of an error of law by the trial court. It does not imply intentional wrong or bad faith, or misconduct, nor any reflection on the judge[,] but means the clearly erroneous conclusion and judgment—one that is clearly against logic and the effect of such facts as are presented in support of the application or against the reasonable and probable deductions to be drawn from the facts disclosed upon the hearing; an improvident exercise of discretion; an error of law.

*Id*. To the extent we must decide a question of law, our standard of review is *de novo*, and our scope of review is plenary. *See id*.

Additionally:

> The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. **When a writing is clear and unequivocal, its meaning must be determined by its contents alone**.
>
> Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This question, however, is not resolved in a vacuum. Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. In the

- 5 -

absence of an ambiguity, the plain meaning of the agreement will be enforced. The meaning of an unambiguous written instrument presents a question of law for resolution by the court.

*Ramalingam v. Keller Williams Realty Grp., Inc.*, 121 A.3d 1034, 1046 (Pa. Super. 2015) (emphasis in original). "Further, absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." *Stackhouse v. Zaretsky*, 900 A.2d 383, 386 (Pa. Super. 2006).

Campbell contends that the trial court misinterpreted paragraph 35 of the Agreement. Campbell points out that the Agreement does not define the words "mortgage" or "note," or limit their use to the mortgage that was in existence at the time the Agreement was executed. Campbell's Brief at 11. Campbell also argues that the inclusion of the word "further" renders the agreement to pay off the mortgage at the time of Decedent's death as a separate obligation which exists "in addition" to paying down 25% of the balance on the due date. *Id*. 11-12. While Campbell concedes that paragraph 35 contains limiting language in that it refers to the "said mortgage," which is defined by its monthly payment amount ($5,591.80) and due date (December 1, 2011), she nevertheless claims that "the only way a loan balance could exist on Campbell's loan after [Decedent's] 25% payment on the (twice) specified due date is via refinancing." *Id*. at 12 (unnecessary capitalization omitted). Campbell additionally points out that, whereas the parties identified other notes and mortgages within the Agreement by referencing their account

or instrument numbers, or by specifying the payoff balances, they did not do so in paragraph 35. Campbell insists that "[t]he reason is because of the [*sic*] parties understood that for Campbell's note and mortgage, the account and/or instrument numbers and payoff balance would change once the loan was inevitably refinanced after [Decedent's] 25% [p]ayment." **Id**. at 13. Campbell further asserts that the parties could have specified that Decedent's obligation to Campbell ended after making the 25% payment, or that the Estate's liability to pay off the mortgage would only arise if Decedent died prior to the due date; however, no such limiting language was included in the Agreement.

The trial court considered Campbell's first two issues and concluded that they lacked merit. The court reasoned:

> The plain language in [paragraph] 35 provides Decedent would pay (a) 25% of the outstanding balance on the mortgage on or before December 1, 2011, and/or (b) the balance of the existing mortgage upon his death, **if the mortgage still existed**. Although "mortgage" is not a defined term in the Agreement, from a simple reading of the plain language in [paragraph] 35, it is clear this refers to the loan secured by the real estate in 2006. Because of refinancing and satisfaction, at the time of Decedent's death, the mortgage did not exist. That obligation was, instead, refinanced and replaced with a new instrument and obligation.

> Although [Campbell] and Decedent may have contemplated something different, the trial court may not speculate about what the parties intended, nor may it look to extrinsic evidence to hold the Estate liable for the refinanced debt, as the Agreement is a fully integrated instrument. [**See** Agreement, § 13]. Further, whether Decedent or the representatives of his Estate had knowledge of the refinancing is not relevant. Neither is the Estate's admission as to creditor status in the matter involving the Estate that remains open in the Berks County Orphan's Court.

That admission—to the extent that is an admission—does not create a contractual obligation in this litigation.

Finally, [Campbell] argued in her brief in opposition to the motion [for summary judgment] that "had there been no expectation of a loan balance after the [date of maturation], additional language would have been unnecessary because [Decedent's] obligation would have ended with the 25% payment on the [date of maturation] and, *ipso facto*, the loan would no longer exist." [**See** [Campbell's] Brief in Opposition, p.8]. This is anything but clear. The Agreement contains a mechanism for [Campbell] to pay down principal debt with Decedent matching that amount. Had [Campbell] elected to drastically reduce principal prior to the date of maturation through lump sum or monthly payments, as matched by Decedent, the mortgage clearly could have been paid off prior to Decedent's death. Further, had Decedent predeceased maturation and refinancing, the Estate would have been liable for the entire amount. Neither event, however, occurred.

Put simply, although the outcome may be harsh, the trial court could not create an obligation from whole cloth. Although [Campbell] now uses the terms "loans" and "mortgage" interchangeably, they are not the same thing. Anticipating the original maturity date on the mortgage, had the parties wished to make Decedent and/or his Estate responsible for the payment of the refinanced obligation, they could have done so clearly in the Agreement. They did not. As a result, when Decedent made his 25% payment in January 2012, he satisfied his obligation under the Agreement with regard to the mortgage. For this reason, no cause of action could stand against moving defendants.

Trial Court Opinion, 1/4/23, at 5-7 (footnote and unnecessary capitalization omitted, emphasis in original).

We discern no abuse of discretion or error of law by the trial court in interpreting the Agreement. Paragraph 35 of the Agreement contemplates the specific mortgage which was in place at the time the Agreement was executed in 2008; namely, the mortgage under which Campbell was required

to pay a monthly amount of $5,591.80, and which had a specified due date of December 1, 2011. Campbell acknowledges that the mortgage which was in place at the time the Agreement was executed in 2008, and which was subject to those specific terms, was satisfied in 2012. **See** Campbell's Brief at 13. The plain language of paragraph 35 simply does not contemplate that Decedent would be obligated to pay off an entirely different mortgage, particularly one that may have a larger balance or a different due date.[3] Accordingly, the trial court did not err or abuse its discretion by determining that, pursuant to the clear and unambiguous terms of the Agreement, Decedent had no further obligation to Campbell with respect to the mortgage upon her satisfaction of same in 2012. As such, Campbell's first two issues merit no relief.

In her third issue, Campbell contends that the stipulation by the Estate in the orphans' court proceedings—that Campbell was a creditor of the Estate—constitutes an admission by the Estate that it is obligated to pay off

---

[3] Indeed, the trial court observed that, following Campbell's refinancing of the mortgage in 2012, the refinanced mortgage had a balance which was $20,000 higher than the mortgage which was in place at the time the Agreement was executed in 2008. **See** Trial Court Opinion, 1/4/23, at 7 n.2. Campbell again refinanced the mortgage in 2017 (after Decedent's death) and averred in the complaint that the Estate was obligated to pay off the mortgage, as refinanced in 2012 and 2017. **See** Complaint, 11/16/17, at ¶ 10.

the balance of the mortgage upon Decedent's death.[4]  However, Campbell's argument regarding this issue consists of a single sentence: "in the orphans' court matter that preceded filing the instant action the Estate stipulated that Campbell was a creditor of the Estate by virtue of the Agreement."  Campbell's Brief at 17.  Pursuant to our appellate rules, an appellant's argument must contain citation to relevant legal authorities as well as reference to the portions of the record and evidence that support the issue on appeal.  **See** Pa.R.A.P. 2119(b)-(d). Campbell has fallen far short of this standard.  **See Keller v. Mey**, 67 A.3d 1, 7 (Pa. Super. 2013).  This Court will not develop arguments on behalf of an appellant or comb the record for factual underpinnings to support an appellant's position.  **See Bombar v. West American Ins. Co.**, 932 A.2d 78, 93 (Pa. Super. 2007).  Accordingly, we find this issue waived for Campbell's failure to adequately develop it.  **See J.J. DeLuca Co., Inc. v. Toll Naval Associates**, 56 A.3d 402, 411 (Pa. Super. 2012) (holding that issue on appeal is waived where appellant fails to develop argument of trial court error or provide pertinent supporting authority).

---

[4] Campbell additionally argues that the parties' course of conduct following Decedent's payment of 25% of the mortgage evidences his knowledge that the Estate would be obligated to pay off any refinanced mortgage on the real estate upon his death.  However, Campbell failed to preserve this issue for our review, as it was not raised in the concise statement.  **See** Concise Statement, 11/30/22; **see also** Pa.R.A.P. 1925(b)(4)(vii); Pa.R.A.P. 302(a) (providing that issues not raised in the trial court are waived and cannot be raised for the first time on appeal).

In her final issue, Campbell contends that the trial court improperly granted summary judgment in favor of Hunter Fayerman and the Estate. Once again, Campbell's argument is woefully undeveloped. Her entire argument for this issue consists of the following:

> Given the fact that the Agreement sets for [*sic*] the parties['] understanding and intent that the Estate would be responsible for Campbell's refinanced loan when he died, the court erred in granting summary judgment in favor of Hunter [Fayerman] and the Estate.
>
> Using the applicable standard of review in summary judgment cases[,] an examination [of] the evidence and pleadings in the light most favorable to Campbell as the non-moving party in the summary judgment motion, there are a genuine issues [*sic*] of material fact regarding the parties' knowledge and intent regarding the Estate's responsibility for the refinanced debt. ***See***, Pa.R.C.P. 1035.2.
>
> In addition to all the fact[s] set forth above, Campbell's Affidavit also states the parties' intent when drafting the Agreement was that the Estate that Severin's [*sic*] would pay off the balance of the refinanced debt. (R. 156a)

Campbell's Brief at 17-18.

This brief argument consists of a boilerplate recitation of the standard of review for granting summary judgment and bald statements that Hunter Fayerman and the Estate were not entitled to summary judgment. There are no citations to or discussion of pertinent legal authority, and Campbell fails to meaningfully develop the basis for her claim that the trial court erred in its decision to grant summary judgment. Accordingly, we could find waiver of the issue on this basis. ***See Keller***, 67 A.3d at 7; ***see also Bombar***, 932 A.2d at 93; ***J.J. DeLuca Co., Inc.***, 56 A.3d at 411.

- 11 -

Nevertheless, in light of our conclusion that the terms of the Agreement impose no obligation on the Estate to satisfy Campbell's refinanced mortgage, we discern no error or abuse of discretion by the trial court in granting summary judgment in favor of Hunter Fayerman and the Estate. Thus, even if not waived, Campbell's final issue warrants no relief.[5]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/13/2023

---

[5] The trial court explained that, although the remaining defendants named in the complaint did not file dispositive motions in the trial court, the court dismissed the claims asserted against them because such claims were also premised on Campbell's theory that Decedent was obligated under the Agreement to pay Campbell's refinanced mortgage. *See* Trial Court Opinion, 1/4/23, at 7.